868 F.2d 653
 57 USLW 2513, 25 Soc.Sec.Rep.Ser. 3,
Medicare&Medicaid Gu 37,666
 The VIRGINIA HOSPITAL ASSOCIATION, Plaintiff-Appellee,
v.
Gerald BALILES, Governor of Virginia; Eva S. Teig,
Secretary of Human Resources of Commonwealth of Virginia;
Bruce U. Kozlowki, Director, Medical Assistance Services;
Bette O. Kanter, Member State Board of Medical Assistance
Services; Joseph M. Teefy, Member State Board of Medical
Assistance Services; R. Michael Berryman, Member State
Board of Medical Assistance Services; Ford Tucker Johnson,
Sr., D.D.S. Member State Board of Medical Assistance
Services; A. Epps, Jr., Medical Doctor; Ruth Hanft, Member
State Board of Medical Assistance Services; Bertha L.
Davis, Ph.D., Member State Board of Medical Assistance
Services; Kathleen Leutze, Member State Board of Medical
Assistance Services; Robert N. Lambeth, Jr., Member State
Board of Medical Assistance Services; Elsa A. Porter,
Member State Board of Medical Assistance Services; John N.
Simpson, Member State Board of Medical Assistance Services;
Defendants-Appellants,
State of Alaska; State of Arizona; State of California;
State of Florida; State of Georgia; State of Idaho; State
of Indiana; State of Kansas; State of Michigan; State of
Minnesota; State of Missouri; State of New Hampshire;
State of New Jersey; State of New Mexico; State of North
Dakota; Commonwealth of Pennsylvania; State of Rhode
Island; State of South Carolina; State of South Dakota;
State of Tennessee; State of Vermont; State of Wisconsin;
State of Wyoming; American Hospital Association Amicus Curiae.
 No. 88-1306.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1988.
Decided Feb. 22, 1989.
Rehearing and Rehearing In Banc Denied March 22, 1989.
 
 Roger Lewis Chaffe, Senior Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., R. Claire Guthrie, Deputy Atty. Gen., Pamela M. Reed, Virginia R. Manhard, Asst. Attys. Gen., on brief), for defendants-appellants.
 Martin Andrew Donlan, Jr. (Judith B. Henry, Peter M. Mellette, Lynne Fleming, Crews & Hancock on brief), for plaintiff-appellee.
 (Gregory M. Luce, Irwin Cohen, Martha Ellett, Eric Schwartz, Fulbright & Jaworski; Michael F. Anthony, American Hosp. Ass'n on brief), for amicus curiae American Hosp. Ass'n.
 (Dave Frahnmayer, Atty. Gen. of Oregon, William F. Gary, Deputy Atty. Gen., Virginia L. Linder, Sol. Gen., Kendall M. Barnes, Jr., Asst. Atty. Gen., Grace Berg Schaible, Atty. Gen. of Alaska, Robert K. Corbin, Atty. Gen. of Arizona, John K. Vandekamp, Atty. Gen. of California, Robert A. Butterworth, Atty. Gen. of Florida, Michael J. Bower, Atty. Gen. of Georgia, James T. Jones, Atty. Gen. of Idaho, Linley E. Pearson, Atty. Gen. of Indiana, Robert T. Stephan, Atty. Gen. of Kansas, Frank J. Kelley, Atty. Gen. of Michigan, Hubert H. Humphrey, III, Atty. Gen. of Minnesota, William L. Webster, Atty. Gen., State of Missouri, Brian McKay, Atty. Gen. of Nevada, Stephen E. Merrill, Atty. Gen. of New Hampshire, Cary Edwards, Atty. Gen. of New Jersey, Hal Stratton, Atty. Gen. of New Mexico, Nicholas Spaeth, Atty. Gen. of North Dakota, Leroy S. Zimmerman, Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Com. of Pa., James E. O'Neil, Atty. Gen. of Rhode Island, T. Travis Medlock, Atty. Gen. of South Carolina, Roger A. Tellinghuisen, Atty. Gen. of South Dakota, W.J. Michael Cody, Atty. Gen. of Tennessee, Jeffrey L. Amestoy, Atty. Gen. of Vermont, Donald J. Hanaway, Atty. Gen. of Wisconsin, Joseph B. Meyer, Atty. Gen. of Wyoming, on brief), for State amici curiae.
 Before RUSSELL and ERVIN, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 Defendants, officials of the government of the Commonwealth of Virginia,[1] (hereinafter collectively referred to as "Virginia") appeal the denial of their motion for summary judgment seeking to dismiss an action commenced against them by the Virginia Hospital Association ("VHA"). VHA is a nonprofit organization, the members of which are all public or private Virginia health care providers, principally hospitals ("providers"). VHA sued to enjoin the procedures Virginia uses to determine what rate of reimbursement VHA members receive for treating Medicaid patients. Virginia argued that for various reasons VHA's suit is not currently justiciable. The district court disagreed and certified its order for appeal under 28 U.S.C.A. Sec. 1292(b). We affirm.
 
 I.
 
 2
 VHA brought this Sec. 1983 action to challenge Virginia's procedures for reimbursing hospitals for the costs of treating Medicaid patients ("Virginia Plan").[2] VHA seeks the following relief: (1) a declaration that the Virginia Plan violates the Medicaid Act, 42 U.S.C.A. Sec. 1396 et seq. ("Medicaid Act"), and therefore also the Supremacy Clause ("Count I"); (2) a declaration that the Virginia Plan violates its members' due process rights ("Count II"); (3) a permanent injunction of the Virginia Plan ("Count III").
 
 
 3
 On September 22, 1986, the district court granted summary judgment for Virginia on the ground that collateral estoppel precluded VHA from litigating issues decided in Mary Washington Hospital, Inc. v. Fisher, 635 F.Supp. 891 (E.D.Va.1985), a similar action brought by one VHA member hospital. We reversed that decision and remanded the case. Virginia Hospital Association v. Baliles, 830 F.2d 1308 (4th Cir.1987).
 
 
 4
 Virginia then moved for summary judgment based on a number of nonjusticiability arguments. Virginia disputed VHA's contention that the Medicaid Act creates a right actionable under Sec. 1983, and argued that the Medicaid Act evidences a congressional intent to foreclose private enforcement. Virginia further contended that stare decisis or the Eleventh Amendment barred VHA's suit, and that VHA lacked standing. Virginia alleged finally that the statute of limitations barred VHA's claim, that the claim is not ripe, and that the district court should abstain.
 
 
 5
 The district court denied Virginia's motion, holding the action currently justiciable. We agree and affirm.
 
 II.
 
 6
 We believe Virginia's most substantial argument is that VHA has no right actionable under Sec. 1983, and so we address that issue first.
 
 A.
 
 7
 Virginia argues that only health care recipients, and not individual or associated health care providers, have rights enforceable under the Medicaid Act. We agree with the district court that the Medicaid Act supplies VHA with an enforceable right, and that Virginia failed to establish a congressional intent to foreclose private enforcement.
 
 
 8
 Section 1983 supplies VHA with no substantive rights. The statute serves simply as a vehicle to redress the deprivation under color of state law "of any rights ... secured by the [federal] Constitution and laws...." 42 U.S.C.A. Sec. 1983 (West 1981). The initial query is accordingly whether the Medicaid Act provides VHA with any substantive right.
 
 
 9
 There is no dispute that the Medicaid Act does not expressly confer a right of action on health care providers. The Supreme Court has held, however, that federal statutes may imply rights actionable under Sec. 1983. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). A number of cases decided since Thiboutot have elaborated criteria for determining whether a particular statute implies a private right of action. In Pennhurst State School v. Halderman, 451 U.S. 1, 15, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981), the Court made plain that the touchstone of the determination is congressional intent, as manifest in the language and legislative history of the statute. See also Middlesex City Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981).
 
 
 10
 In Pennhurst, the Court examined the text and legislative history of the Developmentally Disabled Assistance and Bill of Rights Act of 1975 ("Assistance Act"), 42 U.S.C.A. Sec. 6000 et seq., a statute similar in some respects to the Medicaid Act. Both statutes create programs whereby the Federal Government provides money to States to fund programs for persons specially in need. State participation is voluntary under both statutes, but both require participating states to meet certain conditions to receive federal funds.[3]
 
 
 11
 The Court in Pennhurst noted that while many provisions of the Assistance Act expressly conditioned federal assistance on state compliance, the provision at issue, 42 U.S.C.A. Sec. 6010, did not. 451 U.S. at 13, 101 S.Ct. at 1538. The Court also noted that the right the mentally retarded respondents claimed, that of "appropriate treatment" in the "least restrictive environment", would impose a massive financial obligation on participating states. 451 U.S. at 16-17, 101 S.Ct. at 1539-1540. After examining the language and legislative history of Sec. 6010 and other sections of the Assistance Act, the Court concluded that Sec. 6010 was merely precatory and did not create a right in favor of the respondents. Id. at 18, 101 S.Ct. at 1540. See Wright v. Roanoke Redev't & Hous. Auth., 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987) ("In Pennhurst, a Sec. 1983 action did not lie because the statutory provisions were thought to be only statements of "findings" indicating no more than a congressional preference--at most a "nudge in the preferred directio[n]," 451 U.S. at 19, 101 S.Ct. at 1541, and not intended to rise to the level of an enforceable right.").
 
 
 12
 We note at the outset of our analysis that two other circuits appear to have concluded that Sec. 1396a(a)(13)(A) supplies providers with enforceable rights. Colorado Health Care Ass'n v. Colorado Dep't of Social Serv., 842 F.2d 1158, 1164 n. 5 (10th Cir.1988); Coos Bay Care Ctr. v. Oregon, 803 F.2d 1060 (9th Cir.1986), cert. granted, 481 U.S. 1036, 107 S.Ct. 1970, 95 L.Ed.2d 811 vacated as moot, --- U.S. ----, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987). Because VHA is, for purposes of this decision, simply a medium through which its members have elected to litigate, these decisions respecting individual providers pertain to our consideration of VHA's derivative rights. We are also aware that another district court in this circuit appears to have reached the opposite conclusion in a case pending before us. Vantage Healthcare Corp. v. Virginia Board of Medical Assistance Services, 684 F.Supp. 1329 (E.D.Va.1988) (appeal pending as No. 88-3872). The substantive issue in Vantage is not, as here, the propriety of reimbursement rates generally, but whether providers are entitled to a certain type of reimbursement, called a return on equity capital. This distinction means our decision in this case does not foreordain the outcome of Vantage and, as a corollary, that the district court's dismissal of Vantage's Sec. 1983 action does not necessarily bear on our resolution of this appeal.
 
 
 13
 We believe the language and legislative history of Sec. 1396a(a)(13)(A) imply a congressional intent to allow providers a right of action against State failure to comply with federal Medicaid requirements. Virginia proposes, though, that the significant language of Sec. 1396a(a)(13)(A) is the clause requiring Virginia to assure the Secretary of its compliance. In Virginia's view, as we understand it, it is the elaborate statement of the section's public welfare goals, [stipulating the conditions with which Virginia must comply] that is precatory. Once the Secretary has accepted Virginia's assurances that the plan will comply, there is no federal judicial authority to consider whether Virginia has made good on its promise. We believe a reading of Sec. 1396a(a)(13)(A) in the context of the Medicaid Act, as Pennhurst requires, alone refutes Virginia's interpretation. The comments of the Congress that enacted the Boren Amendment dispel the argument even more forcefully.
 
 
 14
 It is true that Sec. 1396a(a)(13)(A) does not in so many words condition federal assistance on state compliance with its express purpose, which is to require reimbursement rates that are "reasonable and adequate to meet the costs ... incurred by efficiently and economically operated [providers] ... and to assure that [Medicaid patients] have reasonable access ... to inpatient hospital services of adequate quality...." Virginia proposes that the intent behind Sec. 1396a(a)(13)(A) is not forcefully to effect this purpose, but, as with the provision at issue in Pennhurst, simply to "nudge" the states toward action Congress did not see fit to make mandatory. We cannot agree with the proposition and conclude that Sec. 1396a(a)(13)(A) reveals an unambiguous intent to assure reimbursement rates that are reasonable and adequate in fact.
 
 
 15
 Even a cursory reading of the forty-nine provisions of 42 U.S.C.A. Sec. 1396a(a), which stipulate what a state Medicaid plan must include and provide, reveals that none is expressly conditional. Each provision is rather subject to the imperative of their predicate Sec. 1396a(a), which indicates that the provisions specify what a State plan "must" contain. We believe the district court correctly concluded that Sec. 1396a(a)(13)(A) reveals a congressional intent to condition federal assistance on states' achievement of the express purpose of the section, and not simply on states' assurances of compliance.[4]
 
 B.
 
 16
 The legislative history of Sec. 1396a(a)(13)(A) strongly reinforces our interpretation. The Joint Explanatory Statement of the Committee of Conference, commenting on the bill as enacted, states flatly that "the conferees intend that state hospital reimbursement policies should meet the costs that must be incurred by efficiently administered hospitals in providing covered care and services to medicaid eligibles...." H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess., reprinted in 1981 U.S.Code Cong. & Admin.News 396, 1324. The Conference Committee's bill contained much of the text of the bill proposed by the Senate Finance Committee, which had included "a provision requiring states to reimburse hospitals at rates (determined in accordance with methods and standards developed by the states) that are reasonable and adequate to meet the cost [sic] which must be incurred by efficient ... and economical ... [providers]." S.Rep. No. 139, 97th Cong., 2d Sess., reprinted in 1981 U.S.Code Cong. & Admin.News 697. The Committee's comments make plain that the latitude Sec. 1396a(a)(13)(A) grants States is not willfully to assign reimbursement rates, but flexibly to determine what methods and factors will produce rates adequate in fact given the circumstances particular to each State's hospitals.[5]
 
 
 17
 The legislative history also indicates that Congress intended no close scrutiny by the Secretary of Virginia's assurances of compliance with the mandates of Sec. 1396a(a)(13)(A). 1981 U.S.Code Cong. & Admin.News 744. ("The [Senate Finance] committee expects that the Secretary will keep regulatory and other requirements to the minimum necessary to assure proper accountability, and not to overburden the states and [providers] with unnecessary and burdensome paperwork requirements. It is expected that the assurance made by the states will be considered satisfactory in the absence of a formal finding to the contrary by the Secretary.") See supra p. 9 n. 3. This history indicates further the unreason of Virginia's proposition that Congress intended state review and assurances to be the sole means of assuring that the Virginia system provides reasonable access to care of adequate quality.
 
 
 18
 We are aware that OBRA purposed to reduce the federal budget, that Sec. 1396a(a)(13)(A) aims to promote this purpose by implementing a more cost-efficient Medicaid scheme, and that a logical reading of Sec. 1396a(a)(13)(A) could accordingly be that it insulates State reimbursement programs from challenges by hospitals compensated at new, lower rates. Our reading of Sec. 1396a(a)(13)(A), however, is that it guarantees reasonable and adequate reimbursement to hospitals that achieve cost-efficiency. We believe that only this reading protects the balance for which Congress has striven between insuring health care to the poorest citizens and imposing a manageable burden on the federal and state treasuries.
 
 
 19
 Our view of Sec. 1396a(a)(13)(A) allays the concern understandably influential in Pennhurst, that implying a private right of action may lead to crushing financial burdens that participating states could not have foreseen when they elected to participate in the Medicaid program.[6] 451 U.S. at 24-25, 101 S.Ct. at 1543-1544. Virginia has not argued that the obligation VHA seeks to enforce against it, that it provide reasonable and adequate reimbursement rates, does not exist, or that Virginia could not reasonably have foreseen that we could interpret Sec. 1396a(a)(13)(A) as we do today. Virginia argues only that a Sec. 1983 action was not a permissible route by which VHA could present the merits of its grievance. We do not take any position on the merits of that grievance, but agree with the district court's threshold determination that VHA has a right enforceable under Sec. 1983.
 
 C.
 
 20
 Having concluded that Sec. 1396a(a)(13)(A) confers a right on providers, we must now consider whether the Medicaid Act's enforcement provisions reveal an intent to foreclose a private judicial remedy for abridgement of the right. We observe at the outset that exhaustion of state administrative remedies is not ordinarily a prerequisite to commencing a Sec. 1983 action. Patsy v. Board of Regents, 457 U.S. 496, 507-12, 102 S.Ct. 2557, 2563-66, 73 L.Ed.2d 172 (1982). Patsy does not, however, displace the holding of National Sea Clammers, 453 U.S. at 13-14, 101 S.Ct. at 1537-1538, that the constellation of enforcement mechanisms, administrative and otherwise, available under a federal statute may be so elaborate as to evince a congressional intent to bar additional judicial remedies. We believe that the enforcement mechanisms under the Medicaid Act evince no such intent, and hold that VHA is not foreclosed from seeking redress through a Sec. 1983 proceeding.[7]
 
 
 21
 The burden is on Virginia to "demonstrate ... by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." Wright v. City of Roanoke Redev't and Hous. Auth., 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); see also Smith v. Robinson, 468 U.S. 992, 1011-12, 104 S.Ct. 3457, 3468-69, 82 L.Ed.2d 746 (1984), National Sea Clammers, 453 U.S. at 13, 101 S.Ct. at 1538. Congress has not expressly foreclosed private enforcement of the Act. We agree with the district court that Virginia has not satisfied its burden of showing an implied intent to foreclose private judicial enforcement.
 
 
 22
 The Act lacks any provision for a judicial remedy. The Supreme Court has found such a lack a strong indicium of an intent not to foreclose. Wright, 479 U.S. at 427, 107 S.Ct. at 772; Smith, 468 U.S. at 1011, 104 S.Ct. at 3468; National Sea Clammers, 453 U.S. at 14-17, 101 S.Ct. at 1538-40.
 
 
 23
 The Secretary, through the Health Care Financing Administration ("HCFA"), possesses some authority to review State plans. As we have noted, Sec. 1396a(a)(13)(A) requires State assurances "satisfactory to the Secretary." 42 U.S.C.A. Sec. 1396a(a)(42) empowers the Secretary to audit state plans as necessary to insure proper reimbursement. 42 U.S.C.A. Sec. 1396c allows the Secretary to withdraw federal funds from states found not in compliance.
 
 
 24
 In Wright, however, the court found federal agency "authority to audit, enforce ... contracts, and cut off federal funds ... [to be] generalized powers ... insufficient to indicate a congressional intention to foreclose Sec. 1983 remedies." 479 U.S. at 428, 107 S.Ct. at 773.[8] Also similar to the facts of Wright is the apparent absence of any formal mechanism by which providers may bring complaints about state Medicaid administration to the Secretary's attention. Id.
 
 
 25
 The Medicaid Act is not, however, the exclusive source of oversight mechanisms. Virginia has established an administrative appeals mechanism whereby VHA and its members may air at least some of their grievances.[9] The Supreme Court has instructed us, though, that "the existence of a state administrative remedy does not ordinarily foreclose resort to Sec. 1983." Wright, 479 U.S. at 427-28, 107 S.Ct. at 772-73 (citing Patsy, 457 U.S. at 516, 102 S.Ct. at 2568). Nor does Wright suggest that we should somehow amalgamate federal and state remedial mechanisms in considering foreclosure. See also National Sea Clammers 453 U.S. at 17, 101 S.Ct. at 1540 (focusing on remedies "expressly provided by Congress."). Even if amalgamation were correct, we do not believe the mechanisms together amount to a congressionally-directed remedial scheme so comprehensive as to foreclose a private judicial remedy.
 
 III.
 
 26
 We next consider whether the district court was correct to refuse Virginia's request for summary judgment based on stare decisis. Virginia contends that the district court's decision in Mary Washington Hospital Inc. v. Fisher, 635 F.Supp. 891 (E.D.Va.1985), an action brought by a single VHA member hospital against various DMAS officials, has addressed all of the allegations raised here by VHA.[10] The district court declined to conclude that stare decisis warranted dismissal at this stage, but recognized that stare decisis may well apply to issues as they crystallize through further proceedings. We affirm, based on our conclusion that the reimbursement system has changed since the decision in Mary Washington, but emphasize our approval of the district court's willingness to revisit the issue as seems appropriate.
 
 
 27
 The district court in Mary Washington described the case as a challenge by a provider of "the failure of Virginia's [reimbursement] system to take into account [the hospital's location] and other factors that allegedly affected its costs of efficient operation." 635 F.Supp. at 896. The provider had also challenged "the use of the [consumer price index] as the reimbursement escalator and particularly the failure of the system to recognize increases in operating costs resulting from the addition of new and necessary services." Id. The court also observed "that the potential future inadequacy of Virginia's rates under the current system is not now a properly justiciable issue". Id. at 901. It is, of course, precisely this issue that VHA seeks to litigate in this action.
 
 
 28
 The decision in Mary Washington was sufficiently fact specific, and the holdings there sufficiently distinct from what would have been dispositive here, that there were not clear bases on which to dismiss VHA's action outright. It is true that Mary Washington upheld all aspects of the Virginia plan save its appeals mechanism. Virginia has since promulgated a new appeals mechanism, and now employs a different reimbursement escalator. It was not error for the district court to identify differences between Mary Washington and this case sufficient to justify allowing VHA to proceed further.
 
 IV.
 
 29
 We now address the remainder of the arguments Virginia has presented in favor of nonjusticability.
 
 A.
 
 30
 The correct analysis of Virginia's contention that the Eleventh Amendment bars VHA's suit is set forth in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and its progeny. Ex parte Young recognized an exception to the States' Eleventh Amendment immunity for suits that charge state officials with violations of federal law and request prospective relief. We note first that VHA has requested no retroactive monetary relief, and has named as defendants not the Commonwealth itself or any of its agencies or departments, but only certain Commonwealth officials. See Papasan v. Allain, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 2940-41, 92 L.Ed.2d 209, 226-27 (1986).
 
 
 31
 Virginia nonetheless asserts that the Commonwealth is the "real party in interest" to the action and that VHA seeks disguised monetary relief in the form of higher reimbursement rates. Virginia is, of course, correct to some extent, but has nonetheless failed to identify why the case is not within the Ex parte Young exception. A suit against Virginia officials for actions done in obedience to Commonwealth law naturally interests the Commonwealth, but is just the sort of action Ex parte Young authorized. The Supreme Court has also repeatedly recognized that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Papasan, 478 U.S. at 278, 106 S.Ct. at 2940, 92 L.Ed.2d at 227; see also Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). We believe the district court correctly held this action not barred by the Eleventh Amendment.
 
 B.
 
 32
 VHA claims associational standing in behalf of its member hospitals. The standard is whether: (1) the members otherwise have standing; (2) the interest VHA seeks to promote is germane to its purpose;[11] and (3) neither the claims asserted nor the relief requested require the participation of member hospitals. Coles v. Havens Realty Corp., 633 F.2d 384, 390 (4th Cir.1980) (citations omitted) aff'd in part, rev'd on other grounds sub nom., Coleman v. Havens Realty Corp., 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The district court found Virginia to have disputed only the third Coles criterion, and concluded that VHA was challenging conduct affecting its members generally and that VHA's claim for equitable relief was less likely to require members' participation than would a damages action. The court indicated, however, that it would be willing to reconsider if evidence surfaced that lent further support to Virginia's characterization.
 
 
 33
 Virginia here argues that the district court incorrectly assessed the evidence on the third Coles criterion. Virginia also contends that VHA had no direct or proprietary interest in the adequacy of Medicaid rates and so has no interest sufficient to create a case or controversy with Virginia. Cf. Baliles, 830 F.2d at 1315 (Phillips, J., dissenting) ("The standing issue is critically related to the collateral estoppel issue in ways that might well force VHA into somewhat conflicting positions on the nature and degree of the associational relationships here at issue."). We believe, given the district court's resolution of the first two Coles criterion and Virginia's failure to submit new evidence on either, that there is little substance to the case or controversy argument. While there may be some inconsistency between allowing VHA to escape the collateral estoppel effects of one of its member's litigation and recognizing VHA's ability to litigate in its members' behalf, we believe VHA satisfies the Coles criterion.
 
 
 34
 Virginia argues that the district court will have to examine data and make findings for each VHA member hospital in order to resolve VHA's claims and, if appropriate, to grant the requested relief. If this were right, or if it appeared to be so at this stage, Virginia might be correct that VHA fails to satisfy the third Coles criterion. We think though, that Virginia's argument is not now valid.
 
 
 35
 As the district court observed, VHA "asserts it is challenging factors common to all of the hospitals." VHA's claims are against the Virginia Plan, and it has requested relief that would result in the reform of the plan. While reform certainly affects each member hospital, and may at some point require proceedings directed toward sets of providers smaller than VHA, VHA has not requested that the district court do anything but consider the plan. Virginia has not made clear why the district court must necessarily inquire into the affairs of each provider or of smaller groups of providers to do what VHA requests, and we find no evidence in the pleadings or elsewhere that suggests trial or an order in favor of VHA would require findings specific to its individual members. We therefore believe the district court was correct to recognize VHA's standing at this stage, although we endorse the court's willingness to revisit this issue if further progress reveals evidence that VHA should not have standing to proceed alone.
 
 C.
 
 36
 The parties agree that the pertinent limitations period is two years. They also agree that VHA's cause of action first arose on July 1, 1982, when Virginia enacted its current reimbursement plan. VHA filed its complaint on March 19, 1986. The district court found that VHA had alleged an ongoing constitutional violation, and that the statute would not have begun to run until the violation ended. We believe this was correct.
 
 
 37
 Virginia argues that the district court's decision would nullify all statutes of limitation with respect to statutory challenges. The district court, however, held only that "[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations", a holding in line with appellate precedent. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Eldridge v. Bouchard, 645 F.Supp. 749 (W.D.Va.1986), aff'd, 823 F.2d 546 (4th Cir.1987); Long v. Florida, 805 F.2d 1542 (11th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 78, 98 L.Ed.2d 41 (1987).
 
 
 38
 Virginia's subsidiary argument, that the statute of limitations should bar VHA from suing based on conduct after March 19, 1984, seems to repeat its principal argument, and to fail for the same reason. Virginia recognizes that a partial bar would preclude a challenge to the entire reimbursement system and limit the issues to the validity of relatively minor or as-yet-unimplemented aspects of the system. This is patently incompatible with the district court's holding that the limitations period cannot protect an allegedly unconstitutional program.
 
 D.
 
 39
 The district court determined that VHA's claims were ripe as essentially legal products of final agency action and because of the hardship delay would produce.[12] Abbott Laboratories v. Gardner, 387 U.S. 136, 139, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967). The Court found the Virginia plan to have operated for several years, making its enforcement not a matter of speculation. VHA's claim of deficient reimbursement rates presents a purely legal issue. Because VHA challenged the system and not individual providers' reimbursement rates, the court found inapposite Virginia's contention that providers should first have to appeal through the plan's administrative apparatus.
 
 
 40
 Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), on which Virginia relies heavily, supports the district court's decision. In Toilet Goods, a group of cosmetics manufacturers challenged an FDA regulation allowing unannounced inspections of the manufacturers' plants. The FDA had not yet applied its regulation, and the Court found its effect therefore speculative. 387 U.S. at 164, 87 S.Ct. at 1524. In this case, VHA has levied a challenge to a system that has operated for some years and the products of which, the reimbursement rates, VHA believes inadequate. Although no VHA member hospital has prosecuted its case through the administrative appeal mechanism, this mechanism is also the subject of VHA's challenge. VHA has framed its suit as a denial of the legitimacy of the entire Virginia plan. We think the district court was correct to hold that the effects of this system are now sufficiently clear to defeat an argument that VHA's suit is premature.
 
 
 41
 Toilet Goods also supports VHA's position on hardship. In Toilet Goods, the Court found the burdens of preliminary compliance and of piecemeal administrative challenges a sufficient hardship to satisfy a ripeness test. 387 U.S. at 163-64, 87 S.Ct. at 1524-25. Here, VHA alleges that its members' reimbursement rates and opportunity for redress through the administrative apparatus are inadequate. Delay would increase the costs to VHA members, costs the Eleventh Amendment will likely bar them from recovering through a federal suit. VHA members are, moreover, legally obliged to treat Medicaid patients no matter the members' reimbursement rates. For these reasons, we think VHA has shown sufficient hardship to satisfy the Abbott Laboratories test.
 
 E.
 
 42
 Virginia believes the district court should have abstained under either Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) or Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The district court gave brief attention to the Pullman doctrine, finding little to indicate that it applied. We believe this was correct. Pullman abstention is appropriate in a case that involves unsettled issues of state law, the erroneous resolution of which by the federal court would trouble all concerned. This case does not appear to present any unsettled issues of Commonwealth law save, perhaps, the necessity of appealing administratively before suing in federal court. As we have written earlier, we think there is no such necessity here.
 
 
 43
 In Burford, the Court held that it was proper for a federal court to abstain from deciding a challenge to an oil field proration order issued by a Texas regulatory commission. The Court reasoned that the proper allocation of oil resources was a matter of substantial state concern, for which the state had set up a comprehensive regulatory scheme; that there was a significant need for uniform decision-making in the area, which the state had attempted to provide by consolidating review of all claims involving oil allocation in specialized state courts; that the intervention of the lower federal courts would create precisely the sort of disuniformity that the state system was designed to avoid; and that the state courts could adequately vindicate the federal rights at issue. 319 U.S. at 327-34, 63 S.Ct. at 1104-08. Under such circumstances, the Court held, fundamental principles of comity require the federal courts to stay their hand.
 
 
 44
 The district court found that the Virginia plan was not the sort of comprehensive regulatory system it was bound to respect through abstention. The court also found that VHA could not have prosecuted its federal claims through the administrative appeals apparatus, and that the Medicaid Act revealed Medicaid to be the subject of both state and federal concern. Curtis v. Taylor, 648 F.2d 946, 949 (5th Cir.1980). In short, the district court found little that dovetailed with the Burford rationale for abstention. We think this was fairly plainly correct.
 
 V.
 
 45
 For the reasons stated above, the district court's order denying Virginia's motion for summary judgment is affirmed.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Defendants are the Governor of the Commonwealth of Virginia, Gerald L. Baliles, as well as the Commonwealth's Secretary of Human Resources and Director of Medical Assistance Services, and members of the Commonwealth's Board of Medical Assistance Services ("DMAS")
 
 
 [2]
 The Omnibus Budget Reconciliation Act of 1981 ("OBRA") included the Boren Amendment, codified at 42 U.S.C.A. 1396a(a)(13)(A) (West Supp.1988). The Boren Amendment requires Virginia, as a participant in the Medicaid program, to "provide ... for payment ... of the [medical] services provided under the [Virginia Plan] through the use of rates ... which [Virginia] finds, and makes assurances satisfactory to the Secretary [of Health and Human Services], are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable ... laws...." Section 1396a(a)(13)(A) amended Sec. 1396a(a)(13)(E), under which Virginia had been required to determine reimbursement rates "on a reasonable cost-related basis...." In 1982, Virginia amended its Medicaid Plan to incorporate a prospective reimbursement rate-setting mechanism
 
 
 [3]
 The parties to this case have not briefed or argued under what constitutional provision Congress enacted the Medicaid Act. In Pennhurst, the Court found little support for the position that Congress had enacted the Assistance Act pursuant to its power under Sec. 5 of the Fourteenth Amendment. 451 U.S. at 18, 101 S.Ct. at 1540. The Court instead concluded that Congress had acted pursuant to its spending power under Art. I, Sec. 8, Cl. 1. For statutes enacted under the spending power, the Court held that "if Congress intend[ed] to impose a condition on the grant of federal monies, it must [have done] so unambiguously" and subject to certain limits not relevant to the decision. Id. at 17 and n. 13, 101 S.Ct. at 1540 and n. 13. We assume that the Medicaid Act reflects the exercise only of Congress' spending power, and therefore conclude that the holdings in Pennhurst are among those that control in this case
 
 
 [4]
 The regulations implementing Sec. 1396a(a)(13)(A) reinforce our interpretation that the section's requirement of adequate state assurances evinces no congressional intent to insulate State Medicaid reimbursement systems from federal judicial scrutiny. 42 C.F.R. Secs. 447.250-280 (1987). The regulations suggest that the Secretary's task is not to consider the reasonableness of reimbursement rates at large, but rather to consider the adequacy of state assurances that "the methods and standards used by the [State] to set payment rates [are] consistent with 45 C.F.R. 201.2." 42 C.F.R. Sec. 447.252(b); see also 42 U.C.C.A. Sec. 139a(a)(13)(A) (stating parenthetically that the states are responsible for developing methods and standards for determining reimbursement rates), 42 C.F.R. Sec. 447.253(a)-(b). Moreover, the Secretary need not examine state assurances at all; 42 C.F.R. Sec. 447.256(b) states that a state's assurances will be deemed accepted by the Secretary if the Secretary fails to notify the state of its determination within 90 days of receipt of the assurances
 
 
 [5]
 Cf. S.Rep. No. 139, 97th Cong., 2d Sess., reprinted in 1981 U.S.Code Cong. & Admin.News 744 (Summary of Finance Committee Recommendations) ("The bill provides States with additional flexibility in determining the payment rate for inpatient hospital services.... [The bill] substitutes a provision requiring states to reimburse hospitals at rates (determined in accordance with methods and standards developed by the States) that are reasonable and adequate to meet the cost [sic] which must be incurred by efficiently and economically operated [providers].... The Committee continues to believe that States should have flexibility in developing methods of payment for their medicaid programs ... The flexibility given the States is not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care.") The comments make plain that while States have considerable freedom to structure their reimbursement programs to encourage and maintain efficiency, the programs must produce rates related to providers' reasonable costs. These goals are not inconsistent. For example, the Committee comment indicates that a State could categorize providers in any number of ways. Id. As long as the categorization allowed for the promulgation of reasonable reimbursement rates, providers' complaints that another system would produce preferable rates would be unavailing
 
 
 [6]
 The court in Pennhurst "assume[d] that Congress will not implicitly attempt to impose financial obligations on the state." 451 U.S. at 17, 101 S.Ct. at 1539. It seems equally reasonable for us to assume that Congress would not, as it has in the Hill-Burton Act, 42 U.S.C.A. Sec. 291 et seq. require many VHA members to participate in the Virginia Plan but implicitly deny the members an enforceable right to reimbursement rates that meet their costs
 
 
 [7]
 We recognize amici's concerns that authorizing Sec. 1983 actions to redress grievances against State reimbursement systems subverts Congressional intent to give State administrators sole jurisdiction over such grievances and invites a multiplicity of suits burdensome both to State Attorneys General and to the federal courts. We have dealt at length, and shall do so further, with the first concern. As to the second, we note that while the Supreme Court in Pennhurst indicated that the foreseeability and financial consequences to the States of recognizing an implied right of action may properly influence our decision, 451 U.S. at 24-25, 101 S.Ct. at 1543-44, we have not found authority instructing us to account for the threat of burdensome litigation when analyzing a claim of an implied right of action. To the extent this appeal sheds light on that concern, though, we believe it assuages it. We indicate below that stare decisis may foreclose litigation of issues in this case, and can foresee that stare decisis or res judicata resulting from this challenge to Virginia's system may obtain in future similar actions brought by VHA or its members. Also, of course, the Virginia providers' election to claim through VHA seems to allay, rather than heighten, the concern that this action augurs numerous suits by single or small groups of providers
 
 
 [8]
 We assume, as Virginia argues, that HCFA has vigorously exercised its enforcement power. We also agree with Virginia that in Phelps v. Housing Auth. of Woodruff, 742 F.2d 816, 821 (4th Cir.1984), we gave substantial weight to a federal agency's vigorous exercise of its audit power and to its authority to withhold funds in concluding that a statute foreclosed private enforcement. We believe that Wright, decided after Phelps, requires us to give less weight to the Act's oversight provisions and the Secretary's vigor in assessing whether Virginia has met its burden than Phelps gave to HUD's authority
 
 
 [9]
 Virginia promulgated its appeals mechanism not in response to the Medicaid Act itself, but to a regulation promulgated thereunder by the HCFA. The regulation states, "The Medicaid agency must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative reviews, with respect to such issues as the agency determines appropriate, of payment rates." 42 C.F.R. Sec. 447.253(c)
 Notably, the regulation appears not to authorize appeals by class representatives such as VHA. The regulation also leaves to State discretion what issues to entertain. Counsel for VHA stated at oral argument what we understand Virginia not to have disputed, that the Virginia Plan's appeals system would refuse to consider certain of the allegations raised in VHA's complaint.
 
 
 [10]
 Because the parties had not then presented the issue, we expressly refrained from considering the stare decisis implications of Mary Washington in our earlier visit to this case. Baliles, 830 F.2d at 1311 n. 3
 
 
 [11]
 According to its complaint, VHA's purpose is "developing and improving the hospital industry in Virginia."
 
 
 [12]
 In Randall v. Lukhard, 709 F.2d 257 (4th Cir.1983), relevant holdings adopted on rehearing en banc, 729 F.2d 966 (4th Cir.), cert. denied, 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984), we held that for statute of limitations purposes the date on which the plaintiffs' cause of action arose was that of the "final unfavorable administrative action" revoking eligibility for Medicaid. 709 F.2d at 262 n. 7. In Randall, we considered whether the Commonwealth of Virginia had properly denied Medicaid benefits to a number of individual claimants. The discrimination action in Randall was a matter of history and not as in this case, a practice that continues as a matter of settled state policy and that affects plaintiffs still involved in the Medicaid system. We therefore perceive no incompatibility between Randall and our resolutions of the statute of limitations and ripeness issues in this case