MURDOCK, Justice.
Charles K. Breland, Jr., and Breland Corporation (hereinafter refereed to collectively as “Breland”) appeal from a summary judgment entered against them and in favor of the City of Fairhope (“Fair-hope”) by the Baldwin Circuit Court in Breland’s action séeking declaratory relief and damages based' on alleged negligent conduct by Fairhope in relation to real property owned by Breland. We reverse the summary judgment.
I. Facts and Procedural History
In 1999, Breland purchased 65 acres of real property in Baldwin County for $510,364.50 (“the property”). Over 50 percent of the property consists. of wetlands. The property is located outside the corporate limits of Fairhope but within its police jurisdiction.
In 2000, Breland filed applications for permits and certifications from the United States Army Corps of Engineers (“the Corps”) and the Alabama Department of Environmental Management (“ADEM”) in order to fill approximately 10,5 acres of wetlands on.the property (“the fill project”). When Breland filed his application for the Corps permit, Fairhope’s mayor, on behalf of the Fairhope City Council, filed a “formal protest” with the Corps concerning the fill project.
On October 22,2002, ADEM notified the Corps in a letter that it had completed its review of the fill project. The letter stated that ADEM was providing Breland with a water-quality certification pursuant to § 401(a)(1) of the Clean Water Act (“CWA”), codified at 33 U.S.C. § 1341, for the fill project. The certification isshed by ADEM was valid for'five years.
On November 20, 2002, the Corps issued a permit to Breland approving the fill project; the permit would expire in November 2005 (“the Corps permit”). The Corps permit noted that it was issued pursuant to § 404 of the CWA, codified at 33 U.S.C. § 1344, and it set certain conditions on Breland in order to carry out the wetlands-fill project, including purchasing mitigation credits and setting aside a certain portion of the property for use by Weeks Bay Watershed Protective Association, Inc.
In July 2003, Breland purchased the mitigation credits required by the Corps permit for $143,144.' Breland also hired engineers and consultants.for the fill project sometime during this period before he began actual filling activity. In October 2005, the Corps extended Breland’s permit to November 2008. Breland also obtained an extension on his water-quality certification from ADEM.
At the time Breland applied for and obtained the Corps permit in 2002, Fair-hope had in place Ordinance 1000, which provided that “[n]o person, firm or corpo *1080 ration shall engage in any -land disturbing activity within the City until the land owner shall have obtained a permit therefor from the City of Fairhope.” The parties agree that Ordinance 1000 was inapplicable to= Breland’s fill project because the property was located outside Fairhope’s city limits.
On August 28, 2006, Fairhope adopted Ordinance 1313. Ordinance 1313 provided, in pertinent part:
“Section A: Purpose
“The purpose of this ordinances is to protect the water quality and environmental integrity for the area watersheds, streams, rivers, lakes, tributaries, and wetlands. The purpose is to be accomplished specifically by, limiting the use of clays and red soils which may harm aquatic plants or marine life from being used in Flood zones, potential floodways, coastal frontages, and water-' ways.
[[Image here]]
“Section C:
“1. No person, firm or corporation shall commence to filling activity within the City Permitting Jurisdiction[1] until the 'land owner or contractor has obtained a land disturbing permit from the City of Fairhope. Where a building permit application is received prior to commencement of land disturbing activities, the required land disturbance permit may be incorporated therein as a special condition of such building permit.
[[Image here]]
“2. Commencement of Work: No person, firm, or corporation shall bring into the Watershed areas any fill máterial that has more than 10% red or clay.
“3. Maintenance of Control Measures: It shall be the responsibility of the permit-tee to ensure compliance.
“Failure or refusal to comply shall be cause for the City, through its enforcement officers, to issue orders suspending-all work. :<•
[[Image here]]
“6. Penalties: Any person violating the provision of this ordinance shall, upon conviction thereof, be fined a sum of not less than $100 nor more than $500 and, in addition thereto, may be sentenced to the City Jail for a term of not more than 6 months.”
The parties agree that Ordinance 1313 applied to properties located within the police jurisdiction of Fairhope. Ordinance 1313 was repealed and replaced by Ordinance 1423 on May 24, 2010. Ordinance 1423 is more detailed than Ordinance 1313, but it contains the same basic requirements and prohibitions.
In December 2007, Breland deeded approximately 39 acres of the property to Weeks Bay Watershed Protective Association, Inc., fulfilling another condition of the Corps permit. In March 2008, Charles Breland began preparations on the property for the fill project. He started by using heavy machinery to clear an entrance to the interior of the property. In an affidavit Charles Breland executed for the present action on April 24, 2014, he testified that, “[a]t the time filling on the Property was initiated in March of 2008,1 intended to fill the Property with material which would have been in compliance with Ordinance 1313.” •
On March 27, 2008, the “Building Official Zoning Enforcement Officer” for Fair-hope issued a “stop-work” order on the *1081 property. The stop-work order advised that Breland was required to obtain a “land-disturbance permit” for “anything beyond bush hogging.” The stop-work order did not state what municipal ordinance Breland had allegedly violated. Pursuant to the stop-work order, Breland ceased his filling activity.
On April 15, 2008, Breland applied to Fairhope for a land-disturbance permit to “fill mitigated'land.” The permit application did not specify what kind of fill material Breland planned to use for his filling activity.
On June 9, 2008, Fairhope adopted Ordinance 1363. That ordinance ■ instituted a moratorium on the “issuance of land disturbance permits by the City” until October 15, 2008. Ordinance 1363 stated that the purpose of the moratorium was “the preservation of wetlands.” It. also stated that “a moratorium of limited duration and limited scope would be in the public interest and promote orderly growth and development.”
Because Breland’s Corps permit was due to expire in November 2008,. Breland filed an action in the Baldwin Circuit Court on August 8, 2008, against Fairhope seeking a judgment declaring that the permit application he filed in April 2008 should'be granted and‘seeking injunctive relief against the effect of Ordinance 1363. Fairhope- filed a motion to dismiss Bre-land’s complaint.[2] In October 2008, Bre-land obtained an extension of the Corps permit through November 20, 2013.[3] On November 12, 2008,. Breland voluntarily dismissed his .action against Fairhope because the moratorium had expired.
On October 13, 2008, Fairhope adopted Ordinance 1370, which required persons engaging in “wetlands..filling activity” either, in the ¡ city limits or in the police jurisdiction to obtain a land-disturbance permit from Fairhope. Specifically, Ordinance 1370 provided, in pertinent part:
“Section 1: Findings of Fact
“The City Council of the City of Fair-hope (‘the City Council’) determines that many of the Wetlands (hereinafter defined) within the City and the Permitting Jurisdiction (hereinafter defined) have-already'been lost due to drainage or fill. The -loss of Wetlands has increased downstream water pollution, flooding,'and erosion and resulted in the ■loss of wildlife habitat. This ordinance is being adopted to conserve and* protect remaining Wetlands and other water resources.
[[Image here]]
“Section 2: Purposes
“The purpose of this ordinance is to protect'the health, safety, and general 'Welfare of the residents of the City and the' Permitting Jurisdiction, which specifically includes the following: (a) protection of the quality and quantity of all Wetlands and'water’s
[[Image here]]
“Section 4; Wetlands Regulated by This Ordinance
“All Wetlands within the Permitting Jurisdiction are subject to regulation by this ordinance ....
[[Image here]]
“Section 6: Activities Requiring a Permit
, “No person shall fill, excavate, dredge, clear-cut or partially clear-cut timber ‘from, mow grass within, drop any materials in, drain, alter or otherwise conduct any Regulated Activity without a permit ■issued by the Department in accordance *1082 with this ordinance within (a) any Wetland ....
[[Image here]]
“Section 15: Nonconforming Uses
“All uses and activities that were lawful before the passage of this ordinance but which do not conform with the provisions of the ordinance may be continued but may not be expanded, changed, enlarged or altered without a permit as provided above. Nonconforming uses including, but not limited to, buildings, shall not be enlarged or expanded to further encroach into any Wetland. Nonconforming activity which has been discontinued for more than one year shall not be resumed.
[[Image here]]
“Section 18: Enforcement and Penalties “Any person who commits, takes part in, or assists in any violation of any provision of this ordinance is guilty of a misdemeanor and may be fined not more than Five Hundred and. No/100 Dollars ($500.00) for each offense and subject to imprisonment not exceeding six (6) months or both. Each violation of this ordinance shall be a separate offense, and in th case of a continuing violation, each day’s continuance thereof shall be deemed to be a separate and distinct offense.”
Charles Breland testified that after he dismissed his lawsuit against Fairhope “there [were] conversations that the city [initiated] about buying the property.” Fairhope asserts that there is no evidence of discussions about its buying the property before 2010 and then the discussions involved only one member of the Fairhope City Council. Breland notes that the record shows that the negotiations also involved at least Fairhope’s planning director.
On August 10, 2009, Fairhope repealed and replaced Ordinance 1000 with Ordinance 1398. Ordinance 1398 provided, in pertinent part:
“II. Jurisdiction
“This provisions of this ordinance shall apply to all lands within the permitting jurisdiction of the City of Fair-hope.
[[Image here]]
“HI. Purpose
“... [T]he purpose of this regulation is to safeguard persons, protect property, prevent damage to the environment and promote the public welfare by guiding and regulating the design, construction, use, and maintenance of land disturbance in the City of Fairhope.
[[Image here]]
“IV. Definitions
[[Image here]]
“Land Disturbance—For purposes of this article, any grading, filling, draining, excavating, ditching or other earth-moving operation which could result in damage to adjacent lands, public or private, from erosion thereto or siltation thereof shall be deemed land-disturbance activity.
[[Image here]]
“V. Permits
“No person, firm, or corporation shall engage in any land disturbance activity within the city permitting jurisdiction until the landowner has obtained a permit therefore from the city. ...”
According to Breland, by late 2011, he got the impression that Fairhope had been negotiating with him to buy the remainder of the property under false pretenses and that Fairhope actually was trying to delay Breland from resuming the fill project until the Corps permit expired. Thus, on November 3, 2011, Breland resumed filling activities on the property. On the same day, Fairhope issued another stop-work order. In a letter from a Fairhope building *1083 official to Breland dated November 8, 2011, Fairhope stated that the stop-work order was issued because Breland was required to obtain a permit under Ordinance 1398 before land-disturbance activity on the property could be resumed. The letter also stated that Breland needed “to be compliant with Wetland Ordinance 1370 and Red Soil Ordinance 1423 in order to bring fill into parts of this area.” Fairhope also issued a criminal citation to Charles Breland, charging him with failing to obey a city ordinance. Fairhope later agreed to nol-pros the enforcement of the criminal citation in exchange for an assurance from Breland that he would not engage in further filling activities before he obtained the appropriate permits to do so. Once again, Breland stopped his filling activity.
On January 10, 2013, Breland gave Fair-hope notice of a claim against it. On August 7, 2013, Breland filed a complaint against Fairhope in the Baldwin Circuit Court.[4] Before Fairhope filed an answer, Breland filed an amended complaint. The complaint, as amended, asserted six counts against Fairhope.
The first count of Breland’s amended complaint sought a temporary restraining order and a preliminary injunction against Fairhope’s attempts to stop the fill project. The second, third, fourth, and sixth counts of the complaint sought declaratory relief. Specifically, Breland requested a judgment declaring that “Breland is entitled to fill the Property without gaining further approval from the City of Fairhope.” Breland contended that “[njeither Ordinance 1000, ... Ordinance 1313, Ordinance 1398, nor Ordinance 1370 has any legal effect on Breland’s right to fill under the [Corps] Permit.”
In another count seeking declaratory relief, Breland asked for a judgment declaring that “[a]ll ordinances enacted by the City of Fairhope which purport to regulate the filling of wetlands, or the discharge of material into the waters of the United States or the State of Alabama, are void because they conflict with state law, and are preempted by ADEM’s regulatory authority.” In that claim, Breland contended:
“Fairhope’s attempts to regulate, filling are void for two interrelated reasons. First, such regulation is preempted by State environmental statutes providing for ‘a unified environmental regulatory and permit system’ within the state of Alabama. Second, Fairhope’s ordinances are void and unenforceable to the extent that they purport to regulate filling activity which has been authorized by.federal and state law.”
Another of Breland’s claims requested a judgment declaring that Charles Breland was entitled to an expungement of his criminal citation pursuant to § 41-9-646, Ala. Code 1975.[5]
Finally, in “Count V” of his complaint, Breland asserted a claim for money damages based on alleged negligence by the City:
“66. At all times material to this case, the City of Fairhope, and/or Fictitious Defendants A through F, have owed [Breland] a duty to act prudently, and to properly and diligently issue permits in the event any such permits were due to be issued.
*1084 “67. The City of Fairhope, and/or Fictitious Defendants A through F, also owed [Breland] a duty not to baselessly deny or delay activity which is otherwise permitted.
“68. The City of Fairhope, and/or Fictitious Defendants A through F, breached these duties by negligently, carelessly and unskillfully handling their municipal functions. Specifically, these entities treated Breland’s obvious right to fill the Property with flippant disregard, and continuously delayed and ignored Bre-land’s right to fill the Property.
“69. The City of Fairhope, and/or Fictitious Defendants A through F, .continue to breach these duties by refusing to recognize [Breland’s] legal rights to fill, and by maintaining that [Breland] must comply with the ordinances addressed herein] [Fairhope’s] conduct, from 2002 to the present date, amounts to a single sustained attempt to prevent the lawful filling of the Property.
“70. As a result of [Fairhope’s] wrongful actions, [Breland has] suffered, and continue[s] to suffer, money damages which flow from this eleven-year battle with the City of Fairhope.”
In April 2014, the parties jointly moved for dismissal of Breland’s claim in count I for a temporary restraining order and a preliminary injunction. They also requested .that the court conduct a trial on Breland’s declaratory-judgment claims before addressing Breland’s negligence claim. On April 17, 2014, the trial court entered an order consistent with the parties’ wishes. In explaining that the trial on the negligence claim for damages would be bifurcated from the trial on Breland’s declaratory-judgment claims, the trial court explained:
“[Resolution of the Declaratory Judgment Claims may, under certain circumstances, moot the necessity of a trial on the negligence claim, and bifurcation is thus in the interest of convenience, expedition and economy.
'■ “... In the event that [Breland is] the non-prevailing partly] on the Declaratory Judgment Claims (after appeal, if any), then [Breland] stipulate^], and the Court agrees, that the Fifth Cause of Action for negligence and damages will be moot and will then be dismissed with prejudice. In the event that- [Fairhope] is' the non-prevailing party on the Declaratory Judgment Claims after appeal (if appeal is taken), then the Court will allow a reasonable time for discovery and will schedule the negligence claim under the Fifth Cause of Action for trial.”
On April 14, 2014, Fairhope filed a motion for a partial summary judgment concerning the declaratory-judgment claims; Fairhope asserted, among other defenses, the applicable statute of limitations. On April 25, 2014, Breland filed his own motion for a partial summary judgment as to the same claims.
On May 6, 2014, the trial court entered an order granting a summary judgment in favor of- Fairhope as to counts two, three, four,-and six of the amended Complaint based on what it deemed to be the. applicable statute of limitations. The trial court explained its reasoning as follows:
“1. The Court finds no specific Alabama Statute establishing the applicable Statute of Limitations for Declaratory Judgment claims filed in Alabama State Courts. Neither does the Court find that Declaratory Judgment Actions, per se, fell within the provisions of the Alabama two (2) year catch all Statute of Limitations period found in Code of Alabama [1975,] § 6-2-38. Instead, the Court finds that the Statute of Limitations for Declaratory Judgment actions is the same as the Statute of Limitations for *1085 the underlying or associated claim from which the Declaratory Judgment action is derived (i.e., contract, tort, etc).
“2. The Statute of Limitations for a Declaratory Judgment .action must be derived from the applicable Statute of .Limitations for the underlying claim. Likewise, the Statute of Limitations for the underlying claim cannot be derived from the Declaratory Judgment claim. To do otherwise would effectively toll the Statute of Limitations for the underlying claim until, the Declaratory Judgment action is ruled on by the Court. To do otherwise would also» create inconsistent Statute of Limitations periods for the underlying claim and the companion Declaratory Judgment claim. Here, negligence is the underlying or associated claim which' gives rise to the Plaintiffs Declaratory Judgment actions. Consequently, [Breland’s] negligence claim in the instant case is subject to a well-established two-year Statute of Limitations period. Based upon the foregoing, the Court finds that [Breland’s] Declaratory Judgment claims are subject to the same two-year Statute of Limitations period.
“3. Having determined that the Plaintiffs Declaratory Judgment claim in the instant case is subject to a two-year Statute of Limitations period, the Court must also determine whether the current cause pf action was timely -filed within the applicable two-year Statute of Limitations period. In so doing,. the Court has viewed the facts in a light most favorable to [Breland] and determined that [Breland] knew of the alleged misconduct by [Fairhope] not later than August 8, 2008, when he filed his original complaint in the Circuit Court of Baldwin County in Case Number CV-2008-900854 (a-copy of which is attached herewith and made a part of and incorporated herein by reference). [Breland’s] original complaint was subsequently dismissed without prejudice on November 12, 2008. Thereafter, [Breland] filed his current, cause of action nearly five years later on August 7, 2013.
“4. Even', assuming that. [Breland] learned of [Fairhope’s] alleged misconduct as late as August 8, 2008, when he filed his original complaint, his current cause of action filed on August 7,- 2013, would have been filed outside of the applicable two year Statute of Limitations period. Therefore, the Court finds that [Breland’s] Declaratory Judgment claims are barred by the Statute of Limitations.
“Based upon the foregoing, Summary Judgment is entered in favor of-[Fair-hope] -and.against [Breland] to Counts II, III, IV, and VI of the Complaint. Summary Judgment having been entered in favor-of [Fairhope] on Counts II, III, IV, and VI of [Breland’s] Complaint, the Court dismisses Count I of the complaint with prejudice in accordance with the prior order of the Court dated April 17,2014.”-
Subsequently, Breland moved the trial court to enter the May 6, 2014, order as a final judgment, and he- submitted a proposed order that invoked Rule 54(b), Ala. R. Civ. P. On May 30, 2014, the trial court adopted the order submitted by Breland as follows:
“This Court’s Consent Order of April 17, 2014, estáblishéd that [Breland’s] sole remaining claim (for negligence and money damages) is to be dismissed with prejudicé in the event [Breland was] the non-prevailing parity] on [his] Declaratory Judgment Claims ([Breland’s] Second; Third, Fourth and Sixth Causes of Action). Thus, this' Court’s Order of May 5,2014, granting Partial Summary Judgment in favor of Fairhopé on [Breland’s] Second, Third, Fourth and Sixth Causes of Action disposed.of this case in, its *1086 entirety, subject to further rulings which may be made on appeal. As a result, no claims remain pending for adjudication before this Court .... ”
Breland timely appealed to this Court.[6]
II. Standard of Review
“Our- standard of review for a summary judgment is as follows:
“ ‘We review the trial court’s grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summaryrjudgment movant shows there is- no genuine ' issue of material fact, the non-movant must then present substantial evidence creating a genuine issue of material fact. Id. “We review the evidence in a light most favorable to the nonmovant.” 943 So.2d at 795. We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006).’ ”
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 793 (Ala.2007) (quoting Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006)).
III. Analysis
We begin by noting that, based on statements from Fairhope in its brief and from Breland in his reply brief, there appears to be no dispute that the trial court adjudicated all claims against all parties. Accordingly, the judgment appealed from is a final judgment. We agree that the trial court did indeed dispose of all of Breland’s claims against Fairhope, the only named defendant before the trial court.
As for his declaratory-judgment counts—Counts II, III, IV, and VI—Bre-land argues, among other things, that “[t]here is no time limit on [his] claims which challenge the underlying validity of the city ordinances.” Citing Edwards v. Allen, 216 S.W.3d 278, 293 (Tenn.2007), Breland argues that the ordinances at issue were invalid from their inception and that they continue to burden his use of his own land.
Fairhope disagrees with Breland’s position as to the declaratory-judgment claims. In its brief to this Court, Fairhope specifically rejects the -notion that a “continuing tort” or continuing trespass of some type is occurring so as to make a statute of limitations inapposite. Fairhope contends that a two-year statute of limitations, running from its 2008 stop-work order, should apply to cut 'off all ■ of Breland’s claims relating to Fairhope’s conduct.
Breland has the better of these arguments. Under the particular circumstances presented in this case, Breland’s challenge to the validity of the permitting ordinances, which present a current and ongoing infringement of his property rights, is not barred by a statute of limitations. In this case, it is not the enactment of the ordinances or some particular instance of the enforcement of one of them against Breland in the past that is the gravamen of his declaratory-judgment claims, and measuring a limitations period from one of those events thus makes no sense: If Bre-land is unlawfully restrained at the present time—and going forward—in' his use or enjoyment of his property by the current and threatened future enforcement of one or more such ordinances, it is that fact that his declaratory-judgment claims seek to address.
*1087 In Edwards, a landowner complained that a zoning measure allowing objectionable commercial activities on adjacent land was invalid and should not'be enforceable by the adjacent landowner. The Tennessee Supreme Court held that the zoning measure was in fact void as having been improperly advertised and, accordingly, it “ ‘confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.’ ” Id. at 289 (quoting Norton v. Shelby Cty., 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886)). The court held that the plaintiffs action’seeking a declaratory judgment to that effect was not barred by a statute of limitations.[7]
The principle underlying Edwards was reflected in the New York appellate court’s decision in Amerada Hess Corp. v. Acampora, 109 A.D.2d 719, 486 N.Y.S.2d 38 (N.Y.App.Div.1985). As that court explained: “ ‘[N]o period of limitation at all is applicable to an action for a declaratory judgment ... in cases involving a continuing harm, such as the application of an invalid statute.’” 109 A.D.2d at 722, 486 N.Y.S.2d at 41 (quoting 1 Weinstein-Korn-Miller, NY Civ. Prac. ¶ 213.02). See also Davis v. Rosenblatt, 159 A.D.2d 163, 168, 559 N.Y.S.2d 401 (N.Y.App.Div.1990).
In discussing Amerada, the court in Collateral Loanbrokers Ass’n of New York, Inc. v. City of New York, 47 Misc.3d 1225(A), 18 N.Y.S.3d 578 (N.Y.Sup.Ct.2015) (table) (unreported disposition), explained:
“[I]n Amerada Hess Corp., the court held that plaintiffs challenge to the eon-
stitutionality of the Town Board’s decision denying his application for the rezoning of certain parcels of his land was an unconstitutional confiscation of property via a restrictive zoning ordinance (id. at 721). Because the court held that such denial harmed plaintiff every day, the court concluded that the six year statute of limitations urged by defendant, purportedly accruing on the date of the initial denial, was inapplicable because defendant’s conduct constituted a continuing harm (id., at 722). Specifically, the court adopted the holding in Mac-Ewen v. City of New Rochelle (149 Misc. 251 [Supreme Court Westchester County 1933]), which held that an unconstitutional ordinance until its repeal or a judicial declaration of its invalidity, the . same constitutes at least the equivalent of a continuing invasion of plaintiffs property rights akin to a continuing trespass—a situation in which a new cause of action arises in plaintiffs favor against the defendant city each day (id. at 254; see Dowsey v. Village; of Kensington, 257 N.Y. 221, 228, 177 N.E. 427 [1931]).”
In City of Fernley v. State Department of Tax, 366 P.3d 699 (Nev.2016), the Nevada Supreme Court explained:
“Although some courts have held that the statute of limitations does apply to declaratory relief, those issues involved a personal injury and not a constitutional challenge to the prospective application of an assertedly invalid statute) See, e.g., Snyder v. Cal. Ins. Guarantee Ass’n, 229 Cal.App.4th 1196, 177 Cal. *1088 Rptr.3d 853, 861 (2014) (seeking declaratory relief to determine if money is owed to plaintiff); Hill v. Thompson, 297 S.W.3d 892, 898 (Ky.Ct.App.2009) (prisoner. seeking declaratory relief that his due, proces.s rights were violated when he did not r,eceive awards of meritorious . good time credit).”
Id. at 707 n. 5 (emphasis added).
In National Advertising Co. v. City of Raleigh, 947 F.2d 1158 (4th Cir.1991), the United States Court of Appeals for the Fourth Circuit explained an earlier ruling:
“In Virginia Hospital Ass’n v. Baliles, [868 F.2d 653 (4th Cir.1989),] we affirmed a district court opinion holding that ‘[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.’ 868 F.2d at 663 (emphasis added). There, we held that plaintiff s claim that Virginia’s procedures for reimbursing hospitals for the cost of treating Medicaid patients violated the Medicaid Act, 42 U.S.C.A. §§ 1396 et seq., although brought four years after adoption of the procedures, was not barred- by Virginias applicable two-year statute of limitations. This conclusion rested on the holding that ‘the limitations period cannot protect an allegedly unconstitutional program.’ Id.”[8]
Id. at 1167. See also Wallace v. New York, 40 F.Supp.3d 278, 302 (E.D.N.Y.2014) (explaining that “the clock on any challenge to the constitutionality of a statute, whose continued application works an ongoing constitutional violation, starts to run anew, every day that the statute applies”).[9]
In contrast to his declaratory-judgment claims, which seek, to correct the current and ongoing interference of the city in Breland’s use and occupancy of his land, Breland’s Count V is backward-looking, requesting damages stemming from one or more specific actions by Fairhope in the past that interfered with Breland’s use of his property. The distinction between that type of claim and declaratory-judgment claims like Breland’s that seek relief from the ongoing burden imposed by Fair-hope’s ordinances was explained by the Michigan Supreme Court in Taxpayers Allied for Constitutional Taxation v. Wayne County, 450 Mich. 119, 128-29, 537 N.W.2d 596, 600-01 (1995), a case involving the validity of a local tax measure:
“[Tjhere appear to be two actual coñtro-versies .... The first is whether plaintiff may obtain a refund for taxes paid in the past. The second is whether potential class members who are currently *1089 residents of Wayne County must pay the increased tax in the future.
“For purposes of the first controversy, the statute of limitations would prevent the plaintiff from obtaining a judgment declaring that defendant must refund taxes paid more, than one year, before the date the suit was filed. ...
“For purposes of the second controversy—whether members of the potential class who are currently Wayne County property owners must pay the increased tax in the future—the statute of limitations would not bar an otherwise valid claim for declaratory relief because it would derive from a claim for injunc-tive relief, which is not barred. See part 11(B), p. 600.”
450 Mich. at 128-29, 537 N.W.2d at 601.
Based on the foregoing, we agree with Breland that his requests for prospective relief as expressed in his declaratory-judgment claims are not barred by a statute of limitations. As to Count V, however, Fair-hope posits, and the trial court determined, that a two-year statute of limitations applies.' Most of Breland’s argument regarding the statute of limitations is concerned with his declaratory-judgment claims; he makes no meaningful argument supported by authority that a two-year statute of limitations should not apply to Count V. Having no persuasive basis on which to overturn the decision of the trial court in this regard, we apply a two-year limitations period to Count V.[10]
We turn then to the issue whether the stop-work order issued' by Fairhope in 2011 is a discrete act for purposes of applying the applicable statute of limitations to Count V, or whether the limitations period ran from Fairhope’s similar actions before 2011, including the 2008 stop-work order.
Breland contends that, if the two-year limitations period of Ala. 'Code 1975, § 6-2-38(1), applies, his claim for monetary relief as a result of harm caused by Fair-hope’s 2011 stop-work order accrued within that two-year period. He contends that his claim for such damages would not be cut off by the fact that the similar conduct by Fairhope in 2008 falls outside that period because, according to Breland, the 2011 exercise of municipal power- by Fairhope *1090 constituted a “discrete act” of actionable conduct by Fairhope within the statutory period.
As noted, Fairhope takés the position that the two-year statute of limitations runs from the issuance of Fairhope’s 2008 stop-work order and that, therefore, Bre-land’s claim for damages is foreclosed. To Fairhope, the 2011 stop-work order merely represents a reiteration of its previous enforcement of the ordinances rather than a new, separately actionable wrong..
Breland has the better of this argument as well. Breland rightly analogizes the situation here to facts presented in Baugus v. City of Florence, 985 So.2d 413 (Ala.2007). In Baugus, the plaintiff landowners sought damages allegedly resulting from the City of Florence’s operation of a landfill near their properties. The landfill began operation sometime between 1969 and 1972 and was closed in 1987 or 1988. “The decomposition of organic waste material in landfills generates methane, and methane has been consistently, detected at the landfill and in the surrounding areas.” Id. at 416. In March 2002, the landowners informed the City of Florence of their intent to file an action for damages stemming from the migration of methane from the landfill onto their properties.
The City of Florence contended that the landowners’ claims of nuisance, negligence, and trespass based on Florence’s alleged negligent maintenance of the landfill, were barred by the applicable statute of limitations because “the claims accrued, if at all, more than eight years before the landowners notified the City , of their claims.” 985 So.2d at 418. This position by the City of Florence was based on the fact that methane was first detected on the landowners’ properties in 1994. The landowners took the contrary position that there existed a
“continuous and ongoing migration of methane from the landfill, which ... does not continue solely because of the previously completed activity of the City in depositing waste, but because of the City’s negligent maintenance of the landfill site in the years after it had ceased to deposit waste at the landfill.”
985 So.2d at 419.
The Baugus Court decided the statute-of-limitations issue in favor of the landowners:
“We conclude that the landowners’ tort claims do not arise from the installation of the landfill, but from the continuous migration of methane onto their' properties as a result of the City’s maintenance and ongoing operation of the landfill for a public purpose subsequent to its closure. The landowners’ tort claims of nuisance, negligence, and trespass accrue each time the City’s maintenance and ongoing operation of the landfill causes methane to migrate onto the landowners’ property and, thus, those claims are not time-barred.”
985 So.2d at 421.
Under the circumstances of this case,[11] each time Fairhope enforced its ordinances to stop Breland from filling activity on his property Fairhope committed a new act that serves as a basis for a new claim. Fairhope’s last stop-work order was issued in November 2011; Breland filed this action on August 7, 2013. Accordingly, the two-year statute of limitations does not bar a claim for. damages stemming from the 2011 stop-work order.
Conclusion
Based on the foregoing, the summary judgment entered by the trial court against Breland on statute-of-limitations grounds is reversed. This cause is remanded for further proceedings.
*1091 1131057—REVERSED AND REMANDED.
1131210—REVERSED AND REMANDED.
Stuart, Bolin, Parker, Shaw, Main, and Bryan, JJ., concur.

. The parties agree that the term "permitting jurisdiction” is • synonymous with "police ju-risdiclion.”

. Fairhope states in this motion that it denied Breland’s application because the application was incomplete on its face.

, In early 2011, ADEM extended its water-quality certification to expire at the same time as the Corps permit

. In September 2013, the Corps extended Breland's permit to require that filling activity be completed by November 2016. ADEM issued a similar extension.

. Section 41-9-646 concerns purging, modification, or supplementation of criminal records, and it provides, in part, that "[s]hould the record in question be found to be inaccurate, incomplete or misleading, the court shall order it to be appropriately purged, modified or supplemented by an explanatory notation.”.

. Breland has’ informed us in a supplemental - filing that in November 2015 he filed with' the Corps • a request that it extend his permit through November 2018.

. Neither Edwards nor this case involves long-standing compliance with or reliance upon an invalid ordinance such as might bar a challenge to it, for example, under principles of estoppel or laches. See Strickland v. Newton Cty., 244 Ga. 54, 55, 258 S.E.2d 132, 133 (1979) (noting that the general rule that an unconstitutional statute is wholly void and of no force and effect from the day it was enacted is subject to exceptions where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied upon it) (cited in Edwards). See also note 9, infra.

. The Court of Appeals also explained that a different result was reached in Ocean Acres, Ltd. v. Dare County Board of Health, 707 F.2d 103, 105 (4th Cir.1983), where the "continuing wrong” exception was found not to apply-based in part on the nature of .the wrongful conduct and harm alleged, In contrast to the present case, the court in Ocean Acres ultimately concluded that the plaintiff's allegations of harm focused " 'on the initial actions taken by defendants, not on a continuing course of conduct.' " Id. at 1167 (quoting Ocean Acres, 707 F.2d at 106 (emphasis added)).

. Although we conclude that a statute of limitations is not applicable to -the declaratory-judgment claims in this case, we do not foreclose the possibility that under different circumstances a delay in asserting one’s rights could give rise to a bar. This is not such a case, however. As the- Edwards court explained:
"This record, therefore, does not establish the requisite public or private reliance for an exception to the application of the void ab initio doctrine. There has been no indication of either longstanding acquiescence or extensive public reliance on the ordinance at issue. In order to invoke the exception to the doctrine, equitable principles must favor the party relying upon the validity of the ordinance. That reliance must be apparent and the expense must be significant.”
Edwards, 216 S.W.3d at 293. See note 7, supra.

. Breland argues without supporting authority that the six-year limitations period prescribed in Ala. Code 1975, § 6-2-34(6), for "actions for the use and occupation of land" applies to a claim to vindicate his use and occupation of his own land. But see Hamilton v. House, 6 Ala.App. 86, 89, 60 So. 429, 430 (1912) (referring to a plaintiff’s claim for redress of a defendant's use or occupancy of the plaintiffs land); 2 Alabama Pattern Jury Instr. Civ. 36.70 (3d ed. 2013) ("An action for use and occupation is where the plaintiff, an owner, landlord, or person rightfully in possession of real property is attempting to recover a reasonable satisfaction for the use and occupation of his land by the defendant.”). Also, compare Ala. Code 1975, §§ 6—2—34(l)-(5) and (7)-(8) (prescribing six-year limitations periods for "actions for” the wrongful acts of defendants, e.g., "actions for any trespass to person or liberty” as referenced in § 6-2-34(1)). The catch-all two-year limitations period under § 6-2-38(1) arguably would be applicable to Count V if it were viewed as a claim in the nature of inverse condemnation. See McClendon v. City of Boaz, 395 So.2d 2124 (Ala. 1981) (addressing accrual of limitations period for an inverse-condemnation action and taking note of the two-year limitation on the presentation of claims to a municipality prescribed in Ala. Code 1975, § 11-47-23); See generally Town of Gurley v. M & N Materials, Inc., 143 So.3d 1, 13 (Ala.2012) (“We also note that M & .N could have asserted its inverse-condemnation claim, which is based upon the administrative and regulatory actions of . the town, pursuant to the Just compensation Clause."); Palm Beach Isles Assocs. v. United States, 231 F.3d 1354 (Fed.Cir.2000) (holding that permit denial constituted a categorical talcing); and Loveladies Harbor, Inc. v. United States, 28 F.3d 1171 (Fed.Cir.1994) (holding that denial of permit under section 404 of the CWA was a talcing).

. See generally notes 7 and 9, supra.