Phyllis SOSA, Dennis Sosa and Alicia Sosa Sierra, Plaintiffs-Appellants,

v.

Melvin G. COLEMAN, Sheriff of Orange County, or his Successor, Defendant-Appellee.

No. 80–5310.

United States Court of Appeals, Fifth Circuit. Unit B

June 1, 1981.

Rehearing Denied July 24, 1981.

Perrin C. Butler, New Orleans, La., for plaintiffs-appellants.

Fowler, White, Gillen, Boggs, Villareal & Banker, Chris W. Altenbernd, James E. Thompson, Tampa, Fla., for defendant-appellee.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

Appellants seek this court's reversal of the district court's dismissal of their complaint for failure to state a claim upon which relief could be granted. Because we find that the district court erred in determining proximate cause as a matter of law, we reverse the judgment of the district court.

Phyllis Sosa, as widow, and Dennis Sosa and Alicia Sosa Sierra, as children, of Abelardo Sosa brought suit against defendant Coleman on June 17, 1976 for wrongful death. The complaint alleged that Coleman, as Sheriff of Orange County, Florida, was charged with the duty of retaining custody over a convicted felon known as Richard Payne; that Coleman knew or should have known that Payne was dangerous to others; that Coleman, personally or through his employees, recklessly and negligently allowed Payne to escape from his custody; and that Payne fled to New Orleans, Louisiana where he murdered Abelardo Sosa. The appellants averred that Coleman's negligence was the proximate cause of Sosa's death. Jurisdiction was based on diversity of citizenship.

On July 8, 1976, Coleman filed a F.R.C.P. Rule 12(b)(6) motion to dismiss for failure to state a claim. Thereafter, a hearing was held at which time the court deferred ruling on the motion, requesting briefs on the question of whether the substantive law of Florida or Louisiana should apply. A second hearing on the motion to dismiss was held on April 19, 1979. In its Memorandum of Decision issued April 20, 1979, the court ruled that Florida law would govern the case inasmuch as the alleged negligent act of Coleman in allowing Payne to escape occurred in Florida, Coleman was a Florida sheriff, and his duties were fixed by Florida law. The court also stated that under the facts as alleged in the complaint, the murder committed by the escaped prisoner would be viewed as a matter of law to be

unforeseeable, and therefore an efficient intervening cause which would render remote and nonactionable the alleged negligence of Coleman. The motion to dismiss was therefore granted, but appellants were given leave to amend their complaint.

On September 5, 1979, appellants filed their First Supplemental and Amended Complaint, reaverring the allegations of their original complaint, and alleging that Coleman knew or should have known that Payne had a tendency toward violence and danger to the general public in view of Payne's extensive juvenile record; his arrest for armed robbery, kidnapping and abduction, possession of a firearm by a felon, and assault with intent to commit a felony; and Payne's conviction of robbery and aggravated assault. The amended complaint further alleged that Abelardo Sosa was a used car salesman in New Orleans, Louisiana and was murdered by Payne as Payne attempted to steal a car in order to transport himself to his home in Atmore, Alabama; and further, that Payne's escape and flight to Louisiana constituted one continuous action which Coleman could or should have foreseen in view of Payne's past actions and propensities.

On January 23, 1980, Coleman filed a motion to dismiss the amended complaint alleging that the amended complaint merely reaverred the allegations of the original complaint; that the court had correctly ruled on the initial motion to dismiss; and that the additional allegations in the amended complaint did not alter the fact that Payne's actions were an efficient intervening cause rendering remote and nonactionable the alleged negligence of Coleman.

For the reasons stated in its Memorandum of Decision of April 20, 1979, the court dismissed with prejudice the amended complaint on March 25, 1980, and judgment was entered on the same date. This appeal followed.

The issue raised by appellants on appeal is whether the district court erred in hold-

* District Judge of the Northern District of Alabama, sitting by designation.

ing that as a matter of law Payne's actions would be viewed as unforeseeable, and thus an efficient intervening cause rendering remote and nonactionable the alleged negligence of Coleman. Appellants urge that this question should have gone to a jury. We agree.

In passing on a motion to dismiss for failure to state a claim, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *later app., Krause v. Rhodes,* 570 F.2d 563 (6th Cir. 1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978). Further, the allegations of the complaint must be taken as true, *Jenkins v. McKeithen,* 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). Because of the liberal pleading standard prescribed by F.R.C.P. Rule 8(a), dismissal for failure to state a claim is viewed with disfavor, and is rarely granted. *See generally,* C. Wright and A. Miller, Federal Practice and Procedure § 1357 (1969).

The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), where it stated:

In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. at 102. And this court has stated:

It is the well-established policy of the federal rules that the plaintiff is to be given every opportunity to state a claim .... [A] complaint is not subject to dismissal unless "it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim upon which relief [can] be granted."

*Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977), quoting *Byrd v. Bates,* 220 F.2d 480, 482 (5th Cir. 1955). Where the asserted theory of liability is "extreme or even far fetched ..., the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition." *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir. 1963).

In dismissing with prejudice appellants' amended complaint, the court found "as a matter of law" that Richard Payne's actions were unforeseeable and therefore an efficient intervening cause rendering the alleged negligence of defendant Coleman remote and nonactionable, that is, the court found as a matter of law that Coleman's alleged negligence would not be viewed as the proximate cause of Abelardo Sosa's death. On appeal, appellants have strenuously argued proximate cause. Under Florida law, proximate cause is " ... that cause which in natural and continued sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Pope v. Pinkerton-Hays Lumber Co.,* 120 So.2d 227 (Fla.App.1960), *cert. denied,* 127 So.2d 441 (Fla.App.1961). Proximate cause is defined in terms of foreseeability. *Cone v. Inter County Telephone & Telegraph Co.,* 40 So.2d 148 (Fla.1949). A negligent act is not the proximate cause of a loss that results from the intervention of a new and independent cause that is not reasonably foreseeable. *Benedict Pineapple Co. v. Atlantic Coast Line Railroad Co.,* 55 Fla. 514, 46 So. 732 (1908). However, where the intervening act is itself probable or foreseeable, causal connection is not broken. *Railway Express Agency, Inc. v. Garland,* 269 So.2d 708 (Fla.App.1972), *cert. denied,* 275 So.2d 14 (Fla.1973). Where the intervening act is a criminal act of a third party, and because a person usually has no reason to foresee the criminal acts of another, the criminal act generally breaks the chain of causation and thus the original negligence of the defendant cannot be the proximate

cause of the injury resulting from the intervening criminal act. *Singer v. I. A. Durbin, Inc.*, 348 So.2d 370 (Fla.App.1977); *Bryant v. Atlantic Car Rental, Inc.*, 127 So.2d 910 (Fla.App.1961); *Lingefelt v. Hanner*, 125 So.2d 325 (Fla.App.1960). Only where the intervening criminal act was foreseeable will the original tortfeasor's negligence be the proximate cause of the injury. *Cooper v. I. B. I. Security Service of Florida, Inc.*, 281 So.2d 524 (Fla.App.1973), *cert. denied*, 287 So.2d 95 (Fla.1973); *Nicholas v. Miami Burglar Alarm Co.*, 339 So.2d 175 (Fla.1976).

This case turns on whether the criminal actions of Richard Payne were or should have been foreseeable to defendant Coleman. Appellants argue that Payne's actions were or should have been foreseeable to Coleman because of Payne's extensive criminal record. Coleman argues, however, that due to the span of time and space between Payne's escape and the subsequent murder of Abelardo Sosa,[1] Payne's actions could not possibly have been foreseeable.

The Restatement (Second) of Torts § 448, Comments a, b and c (1965), discuss the intervening tortious or criminal acts of a third party as follows:

> § 448. Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence
>
> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.
>
> . . . .
>
> Comment:

a. The rule stated in this Section applies when the actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another or provides a temptation to do so to which the third person yields, but the actor has no reason to expect that the third person would so act. Under the rule stated in this Section, the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction.

b. *When special grounds for anticipating criminal action by third person.* There are certain situations which are commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield. So too, there are situations which create temptations to which no considerable percentage of ordinary mankind is likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime. If the situation which the actor should realize that his negligent conduct might create is of either of these two sorts, an intentionally criminal or tortious act of the third person is not a superseding cause which relieves the actor from liability.

c. *When actor's negligence consists in creating risk of criminal action by third person.* The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see § 449). However, it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to com-

---

1. Payne's escape occurred in Orange County, Florida when he allegedly walked out of court unhandcuffed while appearing in court to be sentenced for robbery and aggravated assault.

The attack on Abelardo Sosa occurred in New Orleans, Louisiana approximately two to three days later.

mit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.

This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime.

*Id.*

The Florida Supreme Court recently addressed the issue of the intervening negligence of a third party. In *Gibson v. Avis Rent-A-Car System, Inc.,* 386 So.2d 520 (Fla.1980), the court held:

A person who has been negligent ... is not liable for the damages suffered by another when some separate force or action is "the active and efficient intervening cause," ... the "sole proximate cause," ... or an "independent cause." [citations omitted.]

On the other hand, one who is negligent is not absolved of liability when his conduct "sets in motion" a chain of events resulting in injury to the plaintiff. [citations omitted.]

. . . .

... [T]he question of whether to absolve a negligent actor of liability is more a question of responsibility. [citations omitted.] If an intervening cause is foreseeable the original negligent actor may still be held liable. *The question of whether an intervening cause is foreseeable is for the trier of fact.* [citations omitted.]

Another way of stating the question whether the intervening cause was foreseeable is to ask whether the harm that occurred was within the scope of the danger attributable to the defendant's negligent conduct. A person who creates a dangerous situation may be deemed negligent because he violates a duty of care. The dangerous situation so created may result in a particular type of harm. The question whether the harm that occurs was within the scope of the risk created by the defendant's conduct may be answered in a number of ways.

First, the legislature may specify the type of harm for which a tortfeasor is liable. [citations omitted.] Second, it may be shown that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct. [citations omitted.] Finally, there is the type of harm that has so frequently resulted from the same type of negligence that " 'in the field of human experience' the same type of result may be expected again." *Pinkerton-Hays Lumber Co. v. Pope,* 127 So.2d 441, 443 (Fla.1961).

*Gibson* at 522–523. [Emphasis added.]

██ It is clear from Florida jurisprudence that proximate cause is a factual question—one to be determined by the jury. "Proximate cause is not a question of science or legal knowledge—it is a fact to be determined in consideration of all the circumstances. It is only when the facts are susceptible of only one inference that the question is one of law for the court. Otherwise it should be submitted to the jury." *Trotter v. Hewett,* 163 So.2d 510, 511–512 (Fla.App.1964). *Accord, Railway Express Agency, Inc. v. Garland, supra; Vining v. Avis Rent-A-Car Systems, Inc.,* 354 So.2d 54 (Fla.1978). Further, "even where the evidence is not in dispute, when conflicting reasonable inferences may be drawn from the admitted facts, questions of negligence and negligence causation are peculiarly questions of fact which should be determined by the jury." *Daniels v. Weiss,* 385 So.2d 661, 664 (Fla.App.1980).

██ Because the district court found as a matter of law that Richard Payne's actions were an efficient intervening cause, we reverse the judgment of the district court and remand this matter for a trial on the merits.

**REVERSED and REMANDED.**