## SUMMIT COUNTY CRISIS PREGNANCY CENTER, INC., Plaintiff,

v.

## Lee FISHER, Attorney General of the State of Ohio in his Official Capacity, Defendant.

### No. 5:93 cv 1194.

United States District Court, N.D. Ohio, E.D.

Aug. 11, 1993.

Stephen P. Leiby, Hollister, Leiby & Rasnick, Akron, OH, for Summit County Crisis Pregnancy Center, Inc., aka Akron Pregnancy Services.

Andrew I. Sutter, Nancy J. Miller, Robert M. Hart, Office of the Atty. Gen., Columbus, OH, for Lee Fisher.

### MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, plaintiff Summit County Crisis Pregnancy Center, Inc. (plaintiff) seeks a declaration from this Court that its advertisements under the topics "Clinics" and "Abortion Services" do not violate the Ohio Consumer Sales Practices Act (CSPA). Plaintiff also seeks a permanent injunction preventing the defendant At-

torney General of the State of Ohio (defendant or defendant Attorney General) from enforcing the CSPA against plaintiff.

The defendant has moved to dismiss on abstention grounds, (Docket No. 6). Plaintiff has responded, (Docket No. 9), and defendant has filed a reply, (Docket No. 10). For the following reasons, defendant's motion to dismiss is denied.

## II. *FACTUAL BACKGROUND*

Plaintiff is a non-profit corporation, which maintains and operates a facility in Akron, Ohio that offers counseling and other services to women who are pregnant. These services include: pregnancy-related counseling; classes on prenatal care, childbirth nutrition and parenting; pregnancy tests; a 24–hour crisis hotline; information on fetal development; information on abortion and alternatives; temporary housing; and referrals to other social services agencies.

Plaintiff advertises its services in various telephone book "yellow pages" and newspapers. In the yellow pages, plaintiff advertises under the heading "Abortion Services." In the display advertisement under this heading, plaintiff states it "is not a medical facility and does not perform abortions." Plaintiff also advertises under the heading "Clinics." In the display under this heading, plaintiff states it is "not a medical facility." Plaintiff also advertises "free pregnancy tests."

On October 5, 1992, defendant Attorney General issued a substantiation request[1] to plaintiff. On November 5, 1992, plaintiff supplied defendant with the requested documents. Plaintiff alleges that on February 17, 1993, without notice and without the opportunity for a hearing, defendant issued a Cease and Desist Order demanding that plaintiff cease advertising under the headings "Clinic" and "Abortion Services," and cease advertis-

ing "free pregnancy test." Defendant Attorney General further demanded that plaintiff execute an Assurance of Voluntary Compliance (AVC).

In demanding cessation of advertising under the headings "Clinics" and "Abortion Services" defendant, plaintiff alleges, claimed that the plaintiff was misleading the public to believe that it was a medical facility providing medical services by physicians. Defendant claims that this conduct is a violation of the CSPA as false and deceptive advertising.[2]

Plaintiff claims that the defendant's conduct is unlawfully chilling its First Amendment rights to free speech, and further alleges that the defendant has failed to adopt substantive rules to be equally applied to all entities throughout the state of Ohio regarding what conduct is false and deceptive, in violation of plaintiff's Fourteenth Amendment rights. Plaintiff further claims that under Ohio law the CSPA does not apply to non-profit corporations, and that if it does, the advertisement is not in violation of the CSPA. Plaintiff seeks both declaratory and injunctive relief.

Defendant has moved for dismissal on abstention grounds. Defendant urges this Court to exercise its right to abstain from proceeding in this matter under any one of three theories: *Pullman* Abstention, *Burford* Abstention, and *Younger* Abstention. Defendant's motion is not well taken.

## III. *STANDARD OF REVIEW*

In ruling on a motion to dismiss, the court must " 'consider the pleadings and affidavits in a light most favorable to the plaintiff.' " *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) (citations omitted). Also, all allegations should be taken as true. *Collins v. Nagle*, 892 F.2d 489 (6th

---

1. Pursuant to Ohio Administrative Code Chapter 109:4–3.

2. Ohio Administrative Code Chapter 109:4–3–10 provides:

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

(A) Make any representations ... which would cause a reasonable consumer to believe such statements are true, unless, ... the supplier possesses or relies upon a reasonable basis in fact ... which substantiates such representations, claims, or assertions of fact, ...

Cir.1989); and *Sosa v. Coleman,* 646 F.2d 991 (5th Cir.1981).

## IV. DISCUSSION

■ The term *abstention* refers to judicially created rules whereby federal courts may not decide some matters before them even though all jurisdictional and justiciability requirements are met. *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The abstention doctrine reflects a desire to promote harmony between the state and the federal courts, and a belief that the state courts should be left to decide matters of unique importance to them. However, abstention is appropriate only in rare situations. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The Court will examine the applicability of each abstention theory in turn.

### A. Pullman Doctrine

The first theory defendant advances in support of its position in favor of abstention is the *Pullman* Doctrine, which derives its name from the case of *Railroad Commission v. Pullman Co., supra.* In *Pullman,* the Texas Railroad Commission issued a regulation preventing the operation of sleeping cars unless there was a conductor, and not only a porter, present. In Texas, at this time, conductors were white and porters were black. The Commission's regulation was subjected to a broad-based challenge, including the allegation that it was unconstitutional racial discrimination in violation of the Fourteenth Amendment.

The Supreme Court unanimously held that the federal district court erred by deciding the challenge to the Texas regulation. The Court said that it was unclear under Texas law whether the Commission had authority to issue the rule. The Court further stated that the federal court should have abstained from deciding the case until the state courts had the chance to clarify the state law. The Court noted that a determination of state law might obviate the need to rule on the constitutional issue before the district court.

Thus, *Pullman* held that where the state law is uncertain and a clarification of state law might make a federal court's determination of a constitutional question unnecessary, the federal court should abstain until the state court has had an opportunity to resolve the uncertainty as to state law.

■ This teaching has translated into a two part test: first, there must exist ambiguous state law, and second, resolution of the ambiguity of the state law must have the potential to make resolution of a constitutional issue unnecessary. *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); and *Ada–Cascade Watch Co. v. Cascade Resource Recovery,* 720 F.2d 897 (6th Cir.1983).

■ In seeking *Pullman* abstention, the defendants argue that a decision by a state court that plaintiff, as a non-profit corporation, is not subject to the CSPA would eliminate the need to pass on the constitutional issues. Ohio courts have yet to address the issue of whether non-profit corporations are subject to the CSPA. "Deferral to the state courts, however, is not appropriate merely because the state law issues are novel and critical to the case." *Id.* at 902. The movant must demonstrate that the state law is fairly subject to interpretation which could render a federal constitutional decision unnecessary. *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965).

In the present case, the defendant has failed to make a showing that the CSPA is vague or ambiguous. It is true that the Ohio courts have yet to rule on the issue of whether the CSPA should be applied to non-profit organizations. Still, there is nothing in the language, itself, which could be interpreted to include or exclude non-profit organizations. *See e.g. Baggett v. Bullitt, supra.* The statute is simply silent on the issue.

■ Further, upon review of the case law surrounding the statute, as well as the legislative history of the state statute, a federal court would certainly be capable of determining the applicability of the statute to the present situation, as federal courts are often called upon to decide matters of state law in

cases involving diversity jurisdiction.[3] *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); and *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276 (6th Cir.1991).

Other considerations also militate against applying the *Pullman* Abstention Doctrine to the present case. Courts have traditionally been reluctant to apply *Pullman* abstention in situations, such as this, which touch upon the constitutionally protected rights of speech and association. *Zwickler v. Koota*, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967); and *Baggett, supra*, 377 U.S. at 378, 84 S.Ct. at 1326. *See also* *Mayor v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) (*Pullman* abstention inappropriate in § 1983 action). For these reasons, the Court rules that *Pullman* abstention is not applicable to the present case.

## B. *Burford Doctrine*

■ The Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), held that abstention was appropriate where there is a need to defer to complex state administrative procedures. In *Burford*, plaintiff challenged the grant of an oil permit to drill to a competitor. The Supreme Court held that the district court should have dismissed the case. The Court emphasized the existence of complex state administrative machinery and the need for centralized decision-making in allocating oil drilling rights. The Court explained that a single agency was best equipped to deal with the complicated issues involving oil rights.

In order to justify *Burford* abstention, the movant must establish "the presence of a complex state regulatory scheme which would be disrupted by federal court review; and ... the existence of a state-created forum with specialized competence in the particular area." *Ada-Cascade Watch, supra*, at 903.

In *Alabama Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), the Court held that the district court should have abstained from ruling in a case where there was adequate state-court review and the issues raised were vital to the State; namely the public need for railcar transportation. In so holding, the Court recognized the fact that the State had created the Public Service Commission to govern these types of disputes between the state and the railroad companies. Further, an appellate process was installed so that individuals and other entities would be able to seek review of the Public Service Commission's decisions. The Court found that this complex administrative system was adequate to address the plaintiff's concerns and that, as a result, the state's need to regulate public transportation in a coherent fashion was an overriding concern.

However, this type of abstention is not warranted in the present case. The Ohio Consumer Sales Practices Act cannot be said to be a "complex state regulatory scheme." The Act merely sets forth various rules regarding sales and advertising in the state of Ohio. Unlike *Alabama Comm'n v. Southern Ry. Co.*, it does not make allowances for the possibility of appeal. While the state of Ohio does have an interest in regulating the advertising of products and services within its boundaries, it has not developed a complex and systematic process which warrants protection under the *Burton* Doctrine.

Further, there is nothing before the Court which would suggest that the plaintiff can prosecute its federal constitutional claim within the administrative process set up by the state. *Virginia Hospital Ass'n v. Baliles*, 868 F.2d 653 (4th Cir.1989). In short, the facts supporting a *Burton* abstention are absent from this case.

## C. *Younger Doctrine*

Finally, the defendant argues that abstention is appropriate under the *Younger* Doctrine. In *Younger v. Harris*, 401 U.S. 37, 91

---

**3.** In a situation where the state supreme court has not ruled on an issue involving state law, the district court sitting in diversity must apply the law of the state as it believes the state supreme court would have applied it if given the opportunity. *Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409 (6th Cir.1992); and *Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir.1987).

**1034**

S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that federal courts may not enjoin pending state court criminal proceedings. Since 1971, the *"Younger* Doctrine" has been applied more liberally to prevent federal courts from interfering with certain state civil and administrative proceedings. *Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The purpose of the *Younger* Doctrine is to promote principles of comity, or "a proper respect for state functions, a recognition of the fact that the entire Country is made up of a Union of separate state governments." *Younger, supra,* 401 U.S. at 44, 91 S.Ct. at 750.

■ The factor to consider in applying the *Younger* Doctrine is "whether the federal court's intervention would unduly interfere with the legitimate activities of the state." *Ada–Cascade, supra* at 902. In *Middlesex Ethics, supra,* the Court articulated the following three-prong test for determining when *Younger* abstention is appropriate in non-criminal proceedings: 1) Are there ongoing state judicial proceedings; 2) Do the proceedings implicate important state interests; and 3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges.

■ In the present case there obviously are no on-going state judicial proceedings. Thus, the second and third factors are not applicable. Finding that this case fails to satisfy the requirements of *Younger* abstention, abstention on this ground is inappropriate as well. *Ankenbrandt v. Richards,* — U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (Abstention based on *Younger* does not apply where there are no pending state proceedings).

## V. *CONCLUSION*

For the foregoing reasons, defendant's motion to dismiss on abstention grounds is denied.

IT IS SO ORDERED.