[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11458
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-02740-RAL-AAS


LUIS SUTHERLIN,
individually and as the beneficiaries of the dissolved trust, et al.,

Plaintiffs,


MIRIAM SUTHERLIN,
individually and as the beneficiaries of the dissolved trust,
JAIME SAIEH,
individually and as the beneficiaries of the dissolved trust,
MOISES SAIEH,
individually and as the beneficiaries of the dissolved trust,

Plaintiffs - Appellants,


versus


WELLS FARGO BANK N.A.,
WELLS FARGO & COMPANY,
FIRST UNION BROKERAGE SERVICES, INC.,
FIRST UNION BANK & TRUST COMPANY (CAYMAN) LTD,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 3, 2019)

Before WILLIAM PRYOR, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiffs Miriam Sutherlin, Jaime Saieh, and Moises Saieh ("Plantiffs") were named beneficiaries of a trust—the Jamce Trust (the "Trust")—established by their father, Abdala Saieh ("Saieh"). The Trust dissolved upon Saieh's death in 2007, but none of the more than $800,000 in trust assets were distributed to Plaintiffs. That's because the Office of Foreign Assets Control of the United States Treasury Department ("OFAC") had blocked the assets in 2006, based on its determination that Saieh and the company formed to invest the assets were "specially designated narcotics traffickers" with connections to the Revolutionary Armed Forces of Colombia ("FARC"). By the time Plaintiffs succeeded in reversing OFAC's blocking order, however, victims of the FARC had served a writ of garnishment on Wells Fargo Bank, N.A. (which held the assets as trustee), as part of their efforts to obtain blocked assets in order to collect on a nine-figure judgment obtained against the FARC. The victim plaintiffs eventually obtained a judgment ordering the turnover of the trust assets, and we affirmed that judgment on appeal.

2

Plaintiffs now bring this lawsuit against Wells Fargo, claiming that its actions and omissions led to the loss of their money based on a jurisdictionally defective writ of garnishment. The district court dismissed the action for failure to state a claim to relief. After careful review, we affirm the district court.

## I. Factual Background

We take the relevant facts from Plaintiffs' amended complaint, the operative pleading in this case, as well as court records from the related garnishment proceeding upon which Plaintiffs' claims are based.[1]

### A. The Jamce Trust and Blocking of Trust Assets

In 1999, Saieh, as settlor, created the Trust in the Cayman Islands. He selected as trustee First Union Bank and Trust Company (Cayman) Ltd., which was later acquired by Defendant Wells Fargo. Wells Fargo assumes responsibility for the actions of the trustee.

Pursuant to the trust deed, the trustee formed Jamce Investments Ltd. ("Jamce"), a Cayman Islands company, to be the wholly owned investment vehicle of the Trust. In the trust deed, Saieh also selected a U.S. investment advisor, First Union National Bank, and a U.S. broker, First Union Brokerage Service. Saieh authorized the transfer of trust assets to an account with the investment advisor, and

---

[1] *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

he directed the broker be used for the "custody of assets" and "all orders for the execution of all securities for the trust."

On November 28, 2006, OFAC named Jamce and Saieh as "specially designated narcotics traffickers" connected to the FARC. Accordingly, OFAC "blocked" all of their assets. *Additional Designation of Persons Pursuant to Executive Order 12978*, 2006 WL 3456921, 71 Fed. Reg. 69609-01 (Dec. 1, 2006). That meant "no property or interests in property" of Saieh and Jamce that were "within the United States" or "within the possession or control of U.S. persons, including their overseas branches," could be "transferred, paid, exported, withdrawn or otherwise dealt in." 31 C.F.R. § 536.201(a).

Saieh died the following year, in October 2007. The trust deed provided for the liquidation and distribution of trust assets to beneficiaries upon his death. Plaintiffs allege that they were named beneficiaries and are now the "beneficial owners" of all trust assets.

After Saieh's death, Wells Fargo initiated the process of distributing trust assets. In late 2007 or early 2008, Wells Fargo dissolved Jamce, closed Jamce's accounts, and consolidated the funds in the Cayman Islands bank predecessor of Wells Fargo. Instead of distributing the funds to Plaintiffs, however, Wells Fargo transferred the trust assets to its "compliance branch" in New York. There, the money was held in a general ledger account associated with OFAC blocking. It

4

appears that Wells Fargo was told by OFAC in mid-2008 that the assets were blocked and could not be distributed to Plaintiffs. Nevertheless, Wells Fargo kept internal documentation showing that the funds were owed to, and would be paid to, the Trust beneficiaries upon lifting of the OFAC blocking order.

### B. *The Stansell Turnover Litigation*

In June 2010, Keith Stansell and several other plaintiffs obtained a $318,030,000 default judgment against the FARC under the Antiterrorism Act. *See Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 722 (11th Cir. 2014). To satisfy that award, the *Stansell* plaintiffs sought the turnover of blocked assets of various "agencies" or "instrumentalities" of the FARC under § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322. *Id.* at 722–23.

In early September 2011, the district court—finding that Jamce was an agency or instrumentality of the FARC—granted the *Stansell* plaintiffs' *ex parte* request to issue a writ of garnishment against blocked assets held by Wells Fargo for Jamce. The writ directed Wells Fargo to answer by stating whether the garnishee was "indebted to" Jamce and, if so, in what amount. Wells Fargo's answer stated that it was "holding $836,167.75 in its general ledger account (together with accrued interest) as part of a blocked transaction involving" Jamce.

5

In the meantime, Plaintiffs and others with an interest in Jamce were pressing OFAC to reconsider the blocking order. These efforts eventually succeeded, and OFAC formally removed Jamce from the list of specially designated narcotics traffickers in January 2012.

Richard Klugh, Plaintiffs' current counsel, represented Jamce and Plaintiffs in the turnover litigation. He entered an appearance on behalf of Plaintiff Moises Saieh in November 2011; Plaintiff Jaime Saieh in February 2012; and Plaintiff Miriam Sutherlin and Jamce in February 2013.

On April 4, 2013, the *Stansell* plaintiffs moved for entry of judgment ordering the turnover of the blocked Jamce assets. They asserted that Jamce's delisting as a specially designated narcotics trafficker had "no retroactive effect" and did not undermine the validity of the previously-served writ. The *Stansell* plaintiffs' counsel certified that they had "conferred in good faith with Richard Klugh, Esq., counsel for JAMCE INVESTMENTS, LTD., which opposes this Motion."

No timely response in opposition was filed, however, and on April 25, 2013, the district court granted the motion for a turnover judgment. In doing so, the court noted that Wells Fargo's answer to the writ did not identify any third parties asserting any claim or interest in the blocked assets, and that, since September 2011, "no person or entity has ever appeared in this action to assert any claim to these blocked assets." The court therefore found that "no other person or entity has ownership,

6

beneficial interest, or rights in the blocked proceeds that are superior to the perfected lien and rights of Plaintiffs." Finding the requirements for a turnover of assets under TRIA § 201 otherwise met, the court ordered Wells Fargo to transfer the funds to the *Stansell* plaintiffs.

Jamce and its "beneficial owners," including Plaintiffs, immediately appealed and simultaneously filed a motion to alter or amend the judgment under Rule 59(e), Fed. R. Civ. P. In the motion, the movants contended that Jamce was an "innocent claimant," that "[n]o member of the Saieh family has ever been convicted of or admitted to commission of a crime," and that the OFAC delisting of Jamce should either be given effect or at least necessitate holding an evidentiary hearing to determine whether Jamce was an agency or instrumentality of the FARC. They also noted that the Trust "consist[ed] of assets that are now owned by the trustee heirs."

The district court denied the Rule 59(e) motion on April 26, 2013. It found that the motion presented "no valid basis" to overturn the turnover judgment and only "raise[d] factual and legal matters that were carefully considered" by the court. Also, the court was "troubled" by the fact that the claimants "never bothered to file a response in opposition as required by Local Rule 3.01(b)."

This Court affirmed the turnover judgment in October 2014. We held that "Jamce waived any opposition to Plaintiffs' motion seeking entry of judgment on the writ of garnishment when, after receiving notice of the motion through counsel,

it failed to timely respond to the motion." *Stansell*, 771 F.3d at 744.  And because "a Rule 59(e) motion cannot be used simply as a tool to reopen litigation where a party has failed to take advantage of earlier opportunities to make its case," we affirmed the denial of that motion as well.  *Id.*  We also held that OFAC's decision to unblock Jamce's assets after service of the writ on the garnishee did not affect the determination of "whether the asset was blocked" for purposes of TRIA § 201.  *Id.* at 733 ("Under [31 C.F.R.] § 536.402, any OFAC de-listing after [service of the writ on the garnishee] was ineffectual for determining whether the asset was blocked for TRIA § 201 purposes.").

With regard to the individual claimants, including Plaintiffs, we noted that they had "asserted standing to challenge the writ of garnishment issued to Wells Fargo as to Jamce, claiming that Jamce was a trust and that they were its beneficiaries."  *Id.* at 743 n.23.  But because the district court found that Jamce was a corporation, not a trust—a finding we saw no "reason[] to disturb"—we concluded that "only Jamce has standing to challenge the issuance of a writ of garnishment against its account."  *Id.* at 743 n.23 (noting that shareholders do not have standing to contest injuries to the corporation).

## II.  Procedural History

Plaintiffs brought this action against Wells Fargo and related entities in state court in October 2016.  In essence, Plaintiffs alleged that Wells Fargo wrongfully

8

kept them in the dark about the location and status of trust assets after Saieh's death, while, at the same time, doing nothing to protect trust assets from the *Stansell* plaintiffs in the turnover litigation, despite the existence of viable defenses.

According to Plaintiffs, the writ of garnishment could have been challenged successfully on two grounds. First, Plaintiffs contended that the Jamce assets were not located in the state of Florida and therefore were outside of the Florida district court's *in rem* jurisdiction. And second, Plaintiffs maintained that, because Wells Fargo dissolved Jamce after Saieh's death, they and not Jamce were the owners of the assets held by Wells Fargo at the time the writ of garnishment was served. But, Plaintiffs alleged, Wells Fargo failed either to raise these two defenses—and in fact led the court to believe that the assets belonged to Jamce and were located in Florida—or to notify Plaintiffs of the information they needed to mount a defense on their own and maintain standing to do so. As a result of these failures, in Plaintiffs' view, the district court entered judgment on a jurisdictionally defective writ of garnishment.

After removal to federal court by the defendants, Plaintiffs filed the operative amended complaint, which contains five counts: (1) breach of fiduciary duty; (2) breach of third-party beneficiary contracts; (3) breach of duty to notify; (4) breach of duty to defend or indemnify; and (5) negligence.

Count 1 alleged that Wells Fargo breached its fiduciary duties to them as trust beneficiaries in a number of ways from the time of Saieh's death to the entry of the turnover judgment.[2]  Count II alleged that Wells Fargo, through the same actions, breached "additional" written contracts with Saieh for the benefit of Plaintiffs that, "[o]n information and belief, . . . are in the possession of Wells Fargo."  Count III alleged that Wells Fargo breached its duties as "a bank holding the assets at issue" to notify Plaintiffs of material facts regarding the assets and the garnishment.  Count IV alleged that Wells Fargo breached its duties as trustee to defend Plaintiffs against the garnishment (by hiring an attorney to represent their interests) or indemnify Plaintiffs for the cost of defense.  Finally, Count V alleged that Wells Fargo acted negligently in its management of trust assets and its handling of the turnover litigation.

---

[2] According to Plaintiffs, Wells Fargo breached its fiduciary duty by failing (a) "to notify the beneficiaries that the Trust terminated in 2007, that [Jamce] was dissolved and ceased to exist by 2008, and/or that the assets belonged to and were due to be distributed to the Plaintiffs"; (b) "to distribute or account for the Trust assets and . . . acknowledge that it owed the funds to the Plaintiffs when the Trust was terminated and when the OFAC listing was lifted," and instead transferring the funds in such a way to "conceal[] the status and ownership of the funds"; (c) "to notify the Plaintiffs regarding the writ of garnishment . . . and . . . to notify the Plaintiffs when Wells Fargo received litigation discovery pertaining to the Plaintiffs' funds . . . or at any other time"; (d) "to raise, on behalf of the Trust, [Jamce] or any of the beneficiaries, any of several available valid defenses to the writ of garnishment"; (e) "to defend or indemnify any of the beneficiaries against the writ of garnishment and instead answer[ing] the writ by concealing its funds transfers and account dealings and the true ownership of the funds"; (f) "to maintain the relevant assets under the jurisdiction of the Cayman Islands as contemplated by the trust"; and (g) "to consult with, or obtain approval from, the beneficiaries prior to [transferring the funds][,] [which] it knew would further block and limit access to the funds."

Wells Fargo moved to dismiss the amended complaint for failure to state a claim. The district court granted that motion. With regard to the claims for breach of fiduciary duty and negligence, the court found that Wells Fargo did not owe or breach the duties alleged by Plaintiffs, and that its conduct did not proximately cause the loss of their funds. With regard to the remaining claims, the court found that Plaintiffs failed to allege the existence of contracts separate from the trust deed, and that Florida did not recognize a cause of action for breach of a duty to notify or a duty to indemnify under the facts alleged. Plaintiffs now appeal.

## III.  Standard of Review

We review *de novo* the dismissal of a complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., accepting as true the facts alleged in the complaint and construing them in the light most favorable to the plaintiff. *Hunt v. Aimco Props, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). To withstand dismissal, a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face.[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[3] Plaintiffs' argument that the district court improperly applied a "heightened" plausibility standard is a non-starter because our review is *de novo*.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## IV.  Discussion

The parties and the district court all analyzed Plaintiffs' claims under Florida state law, though no specific jurisdiction was pled in the complaint.  Because the parties on appeal likewise cite to Florida law, we assume without deciding that Florida law applies.

### A.  Breach of Fiduciary Duty and Negligence

We first consider Plaintiffs' claims for breach of fiduciary duty and negligence, which are their most comprehensive claims.  They contend that, had Wells Fargo not breached various duties owed to them, either they or Wells Fargo could have had the "jurisdictionally-defective" garnishment dismissed and thereby avoided the turnover judgment.

Under Florida law, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by that breach.  *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). The same basic elements—breach of a duty owed to the plaintiff that results in damages proximately caused by that breach—are required to establish a negligence claim.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012).

Both claims require a plaintiff to establish "proximate cause," which "asks whether and to what extent the defendant's conduct *foreseeably* and *substantially* caused the specific injury that actually occurred." *Chirillo v. Granicz*, 199 So.3d 246, 249 (Fla. 2016) (quotation marks omitted) (emphasis added). "[P]roximate cause is that cause which in natural and continued sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. June 1, 1981) (quotation marks omitted).[4]

Intervening causes may break the causal connection between negligent conduct and an injury. "A negligent act is not the proximate cause of a loss that results from the intervention of a new and independent cause that is not reasonably foreseeable." *Id.*; *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So. 2d 520, 522 (Fla. 1980) ("A person who has been negligent . . . is not liable for the damages suffered by another when some separate force or action is 'the active and efficient intervening cause,' the 'sole proximate cause,' or an 'independent' cause."). But "[i]f an intervening cause is foreseeable the original negligent actor may still be held liable." *Gibson*, 386 So. 2d at 522; *see Tallahassee Furniture Co., Inc. v. Harrison*, 583 So. 2d 744, 756 (Fla. Dist. Ct. App. 1991) ("In order for an intervening cause to relieve

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

the negligent party from liability, such intervening cause must be truly independent of and not set in motion by the original negligence.").

We agree with the district court that Plaintiffs failed to state a claim for breach of fiduciary duty or negligence, though at times we offer different reasons than the court. Due to the OFAC blocking order, the writ of garnishment, and the turnover judgment, Wells Fargo was legally prohibited from taking many of the actions Plaintiffs claim it should have. As for the remaining allegations, Plaintiffs have not plausibly established that their damages were proximately caused by Wells Fargo's breach of a duty owed them.

### 1.  Wells Fargo Owed No Duty to Violate the Law or a Court Order

"[I]n deciding whether the complaint states a claim upon which relief can be granted, courts must bear in mind that the duty of prudence, . . . under the common law of trusts, does not require a fiduciary to break the law." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014). In other words, "[t]he trustee is not under a duty to the beneficiary to do an act which is criminal or tortious." Restatement (Second) of Trust § 166, Comment *a*.

Yet Plaintiffs appear to assert that Wells Fargo should have done just that. They contend that Wells Fargo, to comply with its fiduciary and other duties, should have (a) kept trust assets under the jurisdiction of the Cayman Islands; (b) distributed trust assets upon Saieh's death; (c) answered the writ of garnishment by denying that

14

it held any assets belonging to Jamce, which they say had been dissolved or did not exist; and (d) distributed trust assets once OFAC lifted the blocking order. For the reasons explained below, Wells Fargo breached no duty by failing to take these actions.

As noted above, OFAC had listed Jamce as a "specially designated narcotics trafficker" and blocked its assets as of November 2006, before Saieh's death in October 2007. The blocking order applied to any of Jamce's assets that were either "within the United States" or "within the possession or control of U.S. persons, including their overseas branches." 31 C.F.R. § 536.201(a). It prohibited the funds from being "transferred, paid, exported, withdrawn or otherwise dealt in" except as authorized. *Id.* And it required the transfer of the funds to an interest-bearing "blocked account" in a U.S. financial institution. *Id.* § 536.203.

Wells Fargo's conduct is consistent with the OFAC blocking order and the relevant regulations. Whether, at the time of the blocking order, the trust assets with within the United States or within the control of an "overseas branch[]" of Wells Fargo's predecessor bank, which appears to be a U.S. person, they were subject to the blocking order and were required to be transferred to a blocked account in a U.S. financial institution.[5] *See id.* §§ 536.201(a), 536.203. Wells Fargo therefore did not

---

[5] As the district court noted, the trust deed allowed Wells Fargo to open an account with a U.S. investment adviser. So to the extent the assets were moved to the United States for investment purposes before the blocking order, that was no breach of duty.

violate any duty to Plaintiffs by internally transferring trust assets from its Cayman Islands branch to its "compliance branch" in New York. Further, after Saieh's death in 2007, Wells Fargo could not have distributed trust assets to Plaintiffs without breaking the law, so it owed no such duty. *See Dudenhoeffer*, 573 U.S. at 428.

Nor did Wells Fargo breach a duty to deny that it had assets potentially subject to seizure when responding to the writ of garnishment. The OFAC blocking order remained in effect through service of the writ of garnishment on Wells Fargo. As noted above, TRIA § 201 permitted the *Stansell* plaintiffs to satisfy their judgment against the FARC by seizing the "blocked assets" of agencies or instrumentalities of the FARC. *See Stansell*, 771 F.3d at 733. And at the time of service of the writ, Wells Fargo held $836,167.75 in blocked assets that had belonged to Jamce, which the court had found, based on an *ex parte* filing, was an agency or instrumentality of the FARC.

For that reason, Wells Fargo's answer to the writ of garnishment—stating that it was "holding $836,167.75 . . . as part of a blocked transaction involving" Jamce—was accurate and not misleading. While we recognize that Plaintiffs had a claim to ownership of the funds, they have offered nothing to indicate that the dissolution of the Trust or Jamce had any effect on whether the blocked assets were subject to seizure under TRIA § 201. Nor would such a result be consistent with the relevant regulations, which prohibited the assets from being "transferred . . . or otherwise

dealt in."  31 C.F.R. § 536.201(a).  Accordingly, Wells Fargo could not lawfully have denied that it had funds potentially subject to seizure.

Finally, Wells Fargo did not owe or breach a duty to distribute trust assets once OFAC delisted Jamce and unblocked its assets.  Because the writ of garnishment had been served on Wells Fargo before the delisting, the assets were still considered "blocked" for purposes of the *Stansell* plaintiffs' turnover claim, notwithstanding the delisting decision.  *Stansell*, 771 F.3d at 733; *see* 31 C.F.R. § 536.402 (stating that any revocation of an order or ruling issued by OFAC "shall not" affect "any civil . . . proceeding commended or pending prior to such . . . revocation").  And once the turnover judgment was entered and affirmed on appeal, Wells Fargo properly complied with that judgment.

In sum, none of the actions or omissions described above plausibly show that Wells Fargo breached a duty owned to Plaintiffs.

2.  Defense of the Turnover Claim

Wells Fargo was, however, freer to act in two interrelated areas: (1) the information it shared with Plaintiffs; and (2) the defense of the turnover claim. Plaintiffs maintain that Wells Fargo owed duties to provide them material information regarding the trust assets, including the location and status of the assets, and to defend against the writ of garnishment on their behalf.  By failing either to mount a defense or to provide Plaintiffs with information necessary to do so on their

17

own, Well Fargo, in Plaintiffs' view, proximately caused the judgment ordering the turnover of trust assets to the *Stansell* plaintiffs.

However, the amended complaint does not plausibly establish that Wells Fargo's "conduct foreseeably and substantially caused the specific injury that actually occurred." *Chirillo*, 199 So.3d at 249. To begin with, Wells Fargo's allegedly deficient information sharing did not deprive Plaintiffs of the opportunity to defend themselves in the garnishment proceeding. By February 12, 2013, more than two months before the *Stansell* plaintiffs filed the turnover motion on which the judgment was based, counsel had appeared on behalf of all Plaintiffs and Jamce. Furthermore, counsel for Plaintiffs and Jamce had notice of the turnover motion at or around the time it was filed in early April 2013. Thus, despite Wells Fargo's conduct, Plaintiffs and Jamce had an opportunity to contest the turnover motion, as well to appeal the adverse judgment.

Plaintiffs respond that Wells Fargo's deficient response to the writ of garnishment and its deficient information sharing deprived them of standing—or the facts necessary to assert standing—to challenge the turnover motion. But the district court did not rest its decision to grant the turnover motion on a lack of standing. Instead, the court granted the motion as "unopposed" because Plaintiffs and Jamce failed to timely respond in opposition despite notice of the motion. The court then denied their Rule 59(e) motion because it raised issues that could have been raised

18

before judgment was entered.  Although this Court subsequently held that Plaintiffs lacked standing to appeal the turnover judgment, *Stansell*, 771 F.3d at 743 n.23, it's not as though they could have prevailed on appeal.  Even if they had standing, they would have been in the same position as Jamce, which "waived opposition to the motion seeking entry of judgment" and "failed to take advantage of earlier opportunities to make its case," *id.* at 744.

Nor, in any case, do the amended complaint or Plaintiffs' briefing give any reason to plausibly suggest that Plaintiffs' assertion of ownership of trust assets, if properly raised before the district court, would have mattered to the outcome.  As explained above, insofar as the *Stansell* plaintiffs' turnover claim under TRIA § 201 was concerned, Wells Fargo held the "blocked assets" of an OFAC-designated "specially designated narcotics trafficker," notwithstanding Saieh's death and the dissolution of the Trust.  And since the writ of garnishment was served on Wells Fargo before Jamce was delisted by OFAC, proceedings on the writ could proceed to entry of a turnover judgment.  *See Stansell*, 771 F.3d at 732–33.  Plaintiffs offer no adequate explanation in law or fact of how their claims to the trust assets were relevant to the determination of whether the *Stansell* plaintiffs had established their entitlement to seize the blocked assets.  *See id.* at 722–23.

Plaintiffs' final argument concerns the location of trust assets when the writ of garnishment was served.  They assert that, because trust assets were held outside

19

of the state of Florida during garnishment proceedings, the district court had no jurisdiction to attach and order turnover of the assets. Indeed, they note that the court, around two years after the events at issue here, dissolved several writs on that exact ground. So, they say, Wells Fargo could have had the writ dissolved and, because OFAC had delisted Jamce in 2012, the *Stansell* plaintiffs would have been unable to bring a new garnishment action in the jurisdiction where the assets were held. At the very least, Plaintiffs contend, Wells Fargo should have provided this information to Plaintiffs so they could raise the issue on their own.

Again, however, the turnover judgment was entered after Plaintiffs and Jamce had appeared in the proceeding but then "failed to take advantage of . . . opportunities" to make their case and "waived opposition to the motion seeking entry of judgment." *Stansell*, 771 F.3d at 744. It would not have been reasonably foreseeable to Wells Fargo that Plaintiffs, after appearing in the proceeding, would fail to respond to the motion for a turnover judgment, nor was Wells Fargo's conduct a substantial cause of that shortcoming.[6] In other words, their own conduct, in conjunction with the OFAC blocking order and the writ of garnishment, was "the

---

[6] Furthermore, there is nothing in the record to indicate that Plaintiffs themselves believed the location of the assets to be relevant. For instance, they do not allege that they asked Wells Fargo for this information or that they suggested to the Court that it should look into the matter. And the issue of the court's "extraterritorial jurisdiction" was not raised by anyone in the *Stansell* garnishment proceedings until mid-2015, two years after the turnover judgment here. Accordingly, we cannot say that it was reasonably foreseeable to Wells Fargo that the location of the assets might be relevant.

20

active and efficient intervening cause" of the unopposed turnover judgment.  *See Gibson*, 386 So. 2d at 522.

In sum, the allegations in Plaintiffs' amended complaint fail to plausibly show that the critical factors that led to the entry of the turnover judgment—the OFAC blocking order, the writ of garnishment, and Plaintiffs' waiver of opposition to the motion for a turnover judgment—were within Wells Fargo's control or were set in motion by negligence on its part.  *See Sosa*, 646 F.2d at 993; *Gibson*, 386 So. 2d at 522; *Harrison*, 583 So. 2d at 756.  We therefore cannot conclude that Plaintiffs' amended complaint plausibly establishes that Wells Fargo's conduct breached a duty owed to Plaintiffs and thereby "foreseeably and substantially caused the specific injury that actually occurred."  *See Chirillo*, 199 So. 3d at 249.

For these reasons, we affirm the dismissal of Plaintiffs' claims for breach of fiduciary duty (Count I) and negligence (Count V).

## B.  Remaining Claims

Plaintiffs' remaining claims—for breach of contract (Count II), breach of duty to notify (Count III), and breach of duty to defend and indemnify (Count IV)—were likewise properly dismissed.

With regard to Count II, Plaintiffs did not allege sufficient facts to establish the existence or content of any "additional written contacts" between Wells Fargo and Saieh for the benefit of Plaintiffs, nor do the allegations show that Wells Fargo

breached a provision of the trust deed.  The allegations supporting this count are little more than threadbare recitals of a cause of action and conclusory allegations of wrongdoing, which are not enough to state a claim.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs state that they should be given "an opportunity to establish the contract[s'] existence through discovery," Plaintiffs' Br. at 45, but conclusory allegations do not "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678.

With regard to Count III, Plaintiffs have not shown that they have a viable cause of action against Wells Fargo for breach of a "duty to notify" separate from the trust relationship.  To the extent Wells Fargo was required to inform Plaintiffs of the garnishment proceeding, Plaintiffs suffered no harm from that breach because, as we have explained above, they had "the opportunity to defend [themselves] against the claim of the person suing out the attachment."  *See Harris v. Balk*, 198 U.S. 215, 227–28 (1905).

With regard to Count IV, Plaintiffs do not identify a contractual basis for their assertion that Wells Fargo owed a duty to defend or indemnify Plaintiffs in the garnishment proceeding—by, for instance, hiring an attorney or paying their defense costs.  Under Florida law, "a duty to defend is purely contractual and if there is no contract to defend, no such duty exists."  *Budget Rent A Car Sys., Inc. v. Taylor*, 626 So.2d 976, 978 (Fla. Dist. Ct. App. 1993).  Here, Plaintiffs point to no contract to defend, so no such duty existed.  Thus, the only duty to defend that may have arisen

22

under the facts alleged is from the trust relationship, which is covered by the breach-of-fiduciary-duty claim in Count I.

## V. Conclusion

In sum, and for the reasons stated above, we affirm the dismissal of Plaintiffs' amended complaint for failure to claim.

**AFFIRMED.**